VAN LARE, ACTING COMMISSIONER, DEPART-
MENT OF SOCIAL SERVICES OF NEW YORK,
ET AL. *v.* HURLEY ET AL.

No. 74-453.  Argued March 26, 1975—Decided May 19, 1975*

_____

*Together with No. 74–5054, *Taylor et al.* v. *Lavine, Commissioner, Department of Social Services of New York, et al.*, on certiorari to the United States Court of Appeals for the Second Circuit.

BRENNAN, J., delivered the opinion of the Court, in which BURGER, C. J., and DOUGLAS, STEWART, WHITE, MARSHALL, BLACKMUN, and POWELL, JJ., joined. REHNQUIST, J., filed a dissenting opinion, *post*, p. 348.

*Judith A. Gordon,* Assistant Attorney General of New York, argued the cause for appellants in No. 74–453 and respondents in No. 74–5054. With her on the briefs were *Louis J. Lefkowitz,* Attorney General, and *Samuel A. Hirshowitz,* First Assistant Attorney General.

*Martin A. Schwartz* argued the cause and filed a brief for appellees in No. 74–453 and petitioners in No. 74–5054.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The question presented is whether New York regulations reducing pro rata the shelter allowance provided recipients of Aid to Families with Dependent Children (AFDC) to the extent there are nonpaying lodgers liv-

ing in the household conflict with the Social Security Act and federal regulations. We conclude that the state provisions conflict with federal law and are therefore invalid. *King* v. *Smith,* 392 U. S. 309 (1968); *Lewis* v. *Martin,* 397 U. S. 552 (1970); *Townsend* v. *Swank,* 404 U. S. 282 (1971).

I

AFDC is a categorical public assistance program established by the Social Security Act of 1935. Its operation has been described in several recent opinions. See, *e. g., Rosado* v. *Wyman,* 397 U. S. 397, 408 (1970); *King* v. *Smith, supra,* at 313. AFDC provides federal funds to States on a matching funds basis to aid the "needy child . . . who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with" any of the several listed relatives. 42 U. S. C. § 606 (a). States that seek to qualify for federal AFDC funding must operate a program not in conflict with the Social Security Act. *Townsend* v. *Swank, supra,* at 286.

Each of the petitioners in No. 74–5054 receives AFDC on behalf of herself and her minor children. This includes a shelter allowance computed as an item of need separate from other necessities such as food and clothing. N. Y. Soc. Serv. Law § 131–a. Each petitioner's shelter allowance was reduced by New York officials because she allowed a person not a recipient of AFDC and who had no legal obligation to support her family to reside in the household.[1] The reduction was authorized by New York regulations which provide:

"18 N. Y. C. R. R. § 352.31:

---

[1] Petitioner Hurley's lodger was an unrelated male friend, petitioner Taylor's was her sister, and petitioner Otey's was her 23-year-old son.

"(a) For applicant or recipient.

. . . . .

"(3) When a female applicant or recipient is living with a man to whom she is not married, other than on an occasional or transient basis, his available income and resources shall be applied in accordance with the following:

. . . . .

"(iv) When the man is unwilling to assume responsibility for the woman or her children, and there are no children of which he is the acknowledged or adjudicated father, he shall be treated as a lodger in accordance with section 352.30 (d)." [2]

"18 N. Y. C. R. R. § 352.30:

"352.30 Persons included in the budget.

. . . . .

"(d) A non-legally responsible relative or unrelated person in the household, who is not applying for nor receiving public assistance shall not be included in the budget and shall be deemed to be a

---

[2] Effective July 26, 1974, after the Court of Appeals decision in No. 74–5054, § 352.31 (a)(3) was amended to provide:

"(3) When an applicant or recipient is living, other than on an occasional or transient basis, with a person to whom such applicant or recipient is not married, the available income and resources of such person shall be applied in accordance with the following:

. . . . .

"(iv) When the person is unwilling to assume responsibility for the applicant or recipient or his or her children and there are no children for whom such person is legally responsible, such person shall be treated as a lodger in accordance with subdivision (d) of section 352.30 of this Part."

Even prior to this amendment, the pro rata reduction in shelter allowance was applied without regard to the gender of the nonpaying lodger. See n. 1, *supra*. This was apparently because the reductions were pursuant to 18 N. Y. C. R. R. § 352.30 (d), which makes no reference to gender.

lodger or boarding lodger. The amount which the lodger or boarding lodger pays shall be verified and treated as income to the family. For the lodger, the amount in excess of $15 per month shall be considered as income; for such boarding lodgers, the amount in excess of $60 per month shall be considered as income. *In the event a lodger does not contribute at least $15 per month, the family's shelter allowance including fuel for heating, shall be a pro rata share of the regular shelter allowance."* (Emphasis supplied.)

No lodger of any petitioner contributed $15 a month, and pursuant to the italicized sentence, each petitioner's shelter allowance was therefore reduced by a pro rata share. For example, the shelter allowance of $150 monthly being paid to a family of four was reduced to $120 after the lodger moved in.

Petitioners challenged the New York regulations in separate actions in two Federal District Courts.[3] They alleged that in making the presence of the lodger a basis for assuming the availability of income, the regulations were invalid for conflict with 42 U. S. C. § 606 (a), *supra,* and the following regulation, 45 CFR § 233.90 (a) (1974), that implements that statute:

"A State plan under title IV-A of the Social Se-

---

[3] Petitioner Hurley's action was brought in the District Court for the Southern District of New York. *Hurley* v. *Van Lare,* 72 Civ. 3423. Petitioners Taylor and Otey brought their action in the Eastern District of New York. *Taylor* v. *Lavine,* 73 Civ. 699. Each District Court certified class action status for the case before it, the class consisting of "all residents of the State of New York who are or were or will be receiving public assistance, and who have had their grants of public assistance reduced, terminated, suspended or denied, or who are or may be threatened with reduction, termination, suspension, or denial of public assistance, solely because of the presence of a noncontributing lodger in the home pursuant to 18 NYCRR §§ 352.31 (a) (3) (iv) and 352.30 (d)." App. 99, 144.

curity Act [relating to the AFDC program] must provide that the determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, or (if the State plan includes such cases) the unemployment of his father, will be made only in relation to the child's natural or adoptive parent, or in relation to the child's stepparent who is ceremonially married to the child's natural or adoptive parent and is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extend [*sic*] that natural or adoptive parents are required to support their children. Under this requirement, the inclusion in the family, or the presence in the home, of a 'substitute parent' or 'man-in-the-house' or any individual other than one described in this paragraph is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State. *In establishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered, and the income only of the parent described in the first sentence of this paragraph will be considered available for children in the household in the absence of proof of actual contributions.*" (Emphasis supplied.)

Without reaching the recipients' constitutional challenges—denial of due process and equal protection, and infringement of rights of privacy and free association—each District Court adjudged the state regulations to be invalid for conflict with 42 U. S. C. § 606 (a) and 45 CFR § 233.90 (a), *supra,* and granted declaratory and

injunctive relief.[4]   Both judgments were appealed to
the Court of Appeals for the Second Circuit.   The Court
of Appeals held that the New York rules were not in
conflict with federal law, reversed the judgments, and
remanded for convention of a three-judge court to decide
the constitutional challenges.   *Taylor v. Lavine,* 497 F.
2d 1208 (1974).   The three-judge court that was con-
vened sustained the due process challenge to the New
York rules.   380 F. Supp. 167 (ED & SDNY 1974).   We
noted probable jurisdiction of appellants' appeal from the
three-judge court holding, 419 U. S. 1045 (1974) (No.
74–453), and also granted certiorari to the judgment of
the Court of Appeals.   419 U. S. 1046 (1974) (No.
74–5054).   We hold that the Court of Appeals erred in
No. 74–5054 and reverse.   Since in that circumstance we
need not address the constitutional decision in No. 74–
453, we vacate the judgment in that case and remand
with directions to dismiss as moot.   Cf. *United States*
v. *Munsingwear, Inc.,* 340 U. S. 36 (1950).

## II

Title 42 U. S. C. § 606 (a) was previously construed
in *King v. Smith,* 392 U. S. 309 (1968).   That case in-
volved an Alabama "substitute father" regulation, which
denied AFDC benefits to children of a mother who co-
habited in or outside her home with an able-bodied man.
It was irrelevant under the state regulation whether the
man was legally obligated to support the children or
whether he did in fact contribute to their support.   Ala-
bama contended that its rule simply defined nonabsent
"parent" under 42 U. S. C. § 606 (a).   The regulation
was claimed to be justified as having the purpose of

---

[4] *Hurley* v. *Van Lare,* 365 F. Supp. 186 (SDNY 1973).   The
opinion of the District Judge in *Taylor* v. *Lavine, supra,* is
unreported.

discouraging illicit sexual relationships and of putting "informal" families on a par with ordinary families. We concluded that this was an insufficient justification, holding that it is "inconceivable . . . that Alabama is free to discourage immorality and illegitimacy by the device of absolute disqualification of needy children." *King* v. *Smith, supra,* at 326. For, in light of the purpose of AFDC to aid needy children, we held, on the statutory language and legislative history, that the term "parent" in § 606 (a) must be read to include "only those persons with a legal duty of support." 392 U. S., at 327. A broader definition would fail to provide the economic security for needy children which was Congress' primary goal. *Id.,* at 329–330. Thus the Alabama regulation was invalid because its definition of "parent" conflicted with that of the Social Security Act. *Id.,* at 333.

The Department of Health, Education, and Welfare (HEW) codified the holding of *King* v. *Smith* in 45 CFR § 233.90 (a), *supra,* the regulation at issue in the instant case.[5] Its key provision specifies that in determining a child's financial eligibility and the amount of the assistance payment, "the income only of the [legally obligated] parent . . . will be considered available . . . in the absence of proof of actual contributions." 45 CFR § 233.90 (a). We applied this regulation in *Lewis* v. *Martin,* 397 U. S. 552 (1970). *Lewis* presented the question of the validity of a California rule which provided that in computing payments to needy children who lived with their mother and stepfather or "an adult male person assuming the role of spouse" (MARS), consideration should be given to the income of the stepfather or MARS. *Id.,* at 554. We held the California rule invalid as in conflict with the Social Security Act, the HEW regu-

---

[5] As originally phrased, the regulation was numbered 45 CFR § 203.1. See *Lewis* v. *Martin,* 397 U. S. 552, 556 (1970).

lation, 45 CFR § 233.90 (a), and *King* v. *Smith, supra.* We said that "[i]n the absence of proof of actual contribution, California may not consider the child's 'resources' to include either the income of a nonadopting stepfather who is not legally obligated to support the child as is a natural parent, or the income of a MARS—whatever the nature of his obligation to support." 397 U. S., at 559–560. In short, we held that the Social Security Act precludes treating a person who is not a natural or adoptive parent as a breadwinner "unless the bread is actually set on the table." *Id.,* at 559.

### III

Thus the New York regulations at issue are also invalid. This is clearly so insofar as they are based on the assumption that the nonpaying lodger is contributing to the welfare household, without inquiry into whether he in fact does so. Section 352.31 (a)(3), *supra,* provides that "[w]hen a . . . recipient is living with a man to whom she is not married . . . *his available income and resources shall be applied in accordance with the following . . .* (iv) . . . he shall be treated as a lodger in accordance with section 352.30 (d)." (Emphasis supplied.) Plainly treating someone as a lodger is an impermissible means of "applying available income and resources." Under § 352.30 (d), *supra,* when a lodger pays less than $15 a month, the family's shelter allowance is reduced pro rata. Respondents themselves concede in this Court that the regulations are designed so that the lodger will not "be excused from providing his share of shelter cost." Brief for Respondents in Opposition to Pet. for Cert. 9.

Thus under the New York regulations the nonpaying lodger's mere presence results in a decrease in benefits. Yet the lodger, like the Alabama "substitute father" or the California "MARS," may be contributing nothing to

the needy child. *King* v. *Smith, supra,* and *Lewis* v. *Martin, supra,* construe the federal law and regulations as barring the States from assuming that nonlegally responsible persons will apply their resources to aid the welfare child. Those cases therefore compel a reversal of the judgment of the Court of Appeals.

Respondents argue, however, that in any event the New York regulations may be justified on other grounds. They argue first that the presence of the lodger is evidence that the AFDC family has excess room and therefore that its shelter allowance exceeds its needs. That, however, is not how the New York regulations are applied. When a nonpaying lodger moves in, the shelter allowance is reduced pro rata with no regard to space considerations. When the lodger moves out the allowance is returned to its original amount. That practice clearly reveals that the existence of excess space is not the basis of the reduction, because otherwise the allowance would remain reduced after the lodger leaves. Thus, the fact that the allowance varies with the lodger's presence demonstrates that it is keyed, as the regulations plainly imply, to the impermissible assumption that the lodger is contributing income to the family.[6]

Another, somewhat related, justification asserted is that the shelter allowance is reduced to prevent lodgers, who by definition are ineligible for welfare, from receiving welfare benefits. The regulations, however, do not prohibit lodgers from living in welfare homes. The lodger may stay on after the allowance is reduced, and the State takes no further action.[7] The only victim of

---

[6] Indeed it would seem implausible to assume that the presence of a lodger establishes beyond peradventure the existence of excess space. A lodger might simply be sleeping on the couch in an already overcrowded apartment.

[7] "Proration of the shelter allowance lowers the amount of money available to the welfare family, but it does not prevent the family

the state regulations is thus the needy child who suffers reduced benefits. But States may not seek to accomplish policies aimed at lodgers by depriving needy children of benefits. *King* v. *Smith, supra,* at 326; *Lewis* v. *Martin, supra.*

The judgment in No. 74–5054 is reversed and the judgment in No. 74–453 is vacated and remanded with directions to dismiss as moot.

*It is so ordered.*

MR. JUSTICE REHNQUIST, dissenting.

I do not think that the New York nonpaying-lodgers regulation is in conflict with federal statutory law, for the reasons stated by Judge Hays in his opinion for the Court of Appeals for the Second Circuit. *Taylor* v. *Lavine,* 497 F. 2d 1208 (1974). I therefore reach the constitutional issues presented in No. 74–453, and conclude that the regulation is not constitutionally impermissible, for the reasons set forth by Judge Hays in his dissenting opinion in *Hurley* v. *Van Lare,* 380 F. Supp. 167, 177 (ED & SDNY 1974). I would thus affirm in No. 74–5054 and reverse in No. 74–453.

---

from providing its lodger with free living space by diverting part of its basic grant to pay the rent. . . . [T]here is evidence that poor families often find the presence of a lodger worth a sacrifice in income." Recent Cases, Welfare Law—AFDC—Proration of Shelter Allowance, 88 Harv. L. Rev. 654, 657 (1975). See also Note, AFDC Income Attribution: The Man-In-the-House and Welfare Grant Reductions, 83 Harv. L. Rev. 1370, 1373–1374 (1970).