Samuel TERMINI, Plaintiff,

v.

Joseph A. CALIFANO, Jr., as Secretary of Department of Health, Education and Welfare, and Barbara Blum, as Acting Commissioner of the New York State Department of Social Services, Defendants.

Civ-78-20.

United States District Court, W. D. New York.

Feb. 7, 1979.

Monroe County Legal Assistance Corp., Southern Tier Legal Services (Mark H. Wattenberg, Olean, N. Y., of counsel), Olean, N. Y., for plaintiff.

Richard J. Arcara, U. S. Atty., Buffalo, N. Y. (Edward J. Wagner, Asst. U. S. Atty., Buffalo, N. Y., Borge Varmer, Regional Atty., and Marjorie A. Silver, Asst. Regional Atty., Dept. of Health, Education, and Welfare, New York City, of counsel), for defendant Califano.

Robert Abrams, Atty. Gen. of N. Y., Albany, N. Y. (Peter J. Todoro, Asst. Atty. Gen., Buffalo, N. Y., of counsel), for defendant Blum.

CURTIN, Chief Judge.

In this case, the plaintiff challenges the decision of the Social Security Administration [SSA] to terminate his Supplemental Security Income [SSI] benefits, arguing that the category of SSI recipients "living with others" does not meet certain regulatory and constitutional standards applicable to SSI. Both the plaintiff and the defendants have moved for summary judgment. For the reasons stated below, summary judgment is granted to the plaintiff.

## I. FACTS

The pertinent facts are not in dispute. During the relevant time period, the plaintiff was 76 years old and resided in Cattaraugus County, New York. His household consisted of himself and his two natural children, ages 14 and 16. His sole sources of income, other than SSI, consisted of social security retirement benefits and a small civil service pension.

Up until July 1, 1977, when his SSI benefits were terminated, the plaintiff received SSI payments in an amount equal to the difference between his income from other sources and $205.98, the standard of need established by the state for recipients "living with others." In addition to these cash payments, his SSI eligibility automatically entitled him to medicaid coverage, to emergency assistance coverage, and to an exclusion of his income in determining his children's eligibility for Aid to Families with Dependent Children [A.F.D.C.]. 42 U.S.C. §§ 602(a)(24), 1396a(10); N.Y.Soc.Serv.Law § 300. Although the record on this point is not free from ambiguity, his children received a monthly A.F.D.C. grant of approxi-

mately $105.00. (Tr. 35). Their only other source of income, apart from occasional summer earnings, was social security children's benefits of $25.10 per month per child.

On July 1, 1977, the plaintiff received a cost-of-living increase in his social security benefits, as a result of which his monthly income totalled $206.11 ($194.30 in social security benefits and $11.81 in pension benefits). Since his income then exceeded the SSI standard of need for recipients "living with others" by 13¢, SSA, which administers both social security benefits and SSI, notified the plaintiff that he was no longer eligible for SSI. *See* affidavit of Valerie Poris, dated December 4, 1978.

As a result of this determination, the family's net income has been reduced. Although the cost-of-living increase appears to have more than offset the amount that the plaintiff previously received in SSI payments, the household's A.F.D.C. grant fell to $10.20 per month[1] because the plaintiff's income was no longer excluded in calculating his children's eligibility for A.F.D.C.

The plaintiff appealed SSA's determination through the administrative appeals process provided by statute. He argued that since the other members of his household were dependent minor children, he should have been classified as "living alone," which would have raised his standard of need or minimum guaranteed income to $258.65 per month. His classifica-

tion as "living with others," he argued, violated both federal regulations and the Constitution. The plaintiff's arguments were rejected at all administrative levels, and he now seeks judicial review of the termination under 42 U.S.C. § 1383(c)(3).[2]

## II. THE SSI PROGRAM

The SSI program went into effect on January 1, 1974, replacing a variety of state administered categorical aid programs for the aged, blind, and disabled. In an attempt to standardize widely disparate eligibility requirements and benefit levels, Congress designed SSI to provide eligible needy persons with a minimum guaranteed monthly income for basic living expenses. SSI is a federal program and is administered by SSA.

SSI provides benefits to aged, blind, and disabled individuals who have incomes and resources below the statutory ceilings. Benefits take the form of a flat grant set by statute. 42 U.S.C. § 1382. Two benefit levels are established, one for eligible individuals and one for eligible spouses. These amounts are reduced by the recipient's actual, non-excludable income. An eligible individual or couple who lives in another person's household and receives support and maintenance in cash or in kind is also subject to a one-third reduction in benefits. *Id.* § 1382a(a)(2)(A).

---

1. Mr. Termini's request for a mortgage allowance was disallowed by the agency. Had it been allowed, as the agency subsequently determined it should have been, the household would have received an A.F.D.C. grant of $77 per month. *See* plaintiff's Reply Brief at 10–11.

2. On September 29, 1977, the plaintiff began earning $116.32 every two weeks. In February of 1978, the plaintiff was hospitalized for ten days and thereafter did not return to work. While he was recuperating at home, his former wife returned to his household and one of his children was placed in foster care. His former wife subsequently moved out in August of 1978, and the remaining child accompanied her. Mr. Termini currently lives alone. Affidavit of Samuel Termini, dated October 9, 1978.

Because of these changes in the plaintiff's circumstances, on September 25, 1978 the court directed the parties to file additional papers on the extent to which this litigation is moot. The defendants argue that even under the more generous "living alone" category, the plaintiff's earnings rendered him ineligible for SSI as of September 29, 1977 and that therefore the court's review of the plaintiff's eligibility should be limited to the period of time between July 1 and September 29, 1977. I find that SSA's decision to terminate the plaintiff's SSI grant as of July 1, 1977 is properly before the court. 42 U.S.C. § 1383(c)(1) and (3); *cf. Mathews v. Eldridge*, 424 U.S. 319, 326–32, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). But the question of whether and at what time the plaintiff later became ineligible for SSI was not subject to administrative appeals and therefore is not within the scope of judicial review.

Under the program, individual states are encouraged to supplement the basic federal benefits by establishing minimum income levels or standards of need above the minimum federal standard. *Id.* § 1382e. These state supplements may be administered either by the state or by the federal government, but Congress will bear the administrative costs of optional supplements, if federal administration is elected. This scheme has resulted in virtually all state supplements being administered by the SSA.

In return for federal administration, the state must enter into an agreement with HEW which satisfies certain statutory and regulatory requirements. *Id.* This agreement must contain "rules with respect to eligibility for or amount of the supplementary payments, and such procedural or other general administrative provisions, as the Secretary finds necessary . . . to achieve efficient and effective administration of both the [SSI] program and the optional State supplementation." *Id.* § 1382e(b)(2).

Under the federal regulations, a state may provide different supplementation levels based on different living arrangements. However, these differences "must be based on rational distinctions between both the types of living arrangements and the costs of those arrangements." 20 C.F.R. § 416.-2030(b). The regulation provides in pertinent part as follows:

(a)(2) *Living arrangements.* In addition, a State may elect no more than five variations in recognition of the different needs which result from various living arrangements. Types of living arrangements for which variations may be allowed include arrangements such as:

(i) Living alone,

(ii) Living with an ineligible spouse,

(iii) Personal care facility,

(iv) Domiciliary or congregate care facility.

(b) *Relationship to actual cost differences.* Under the agreement, variations in State supplementary payment levels will be permitted for each living arrangement the State elects. These differences must be based on rational distinctions between both the types of living arrangements and the costs of those arrangements.

20 C.F.R. § 416.2030.

On November 30, 1973, New York entered into an agreement with HEW to provide optional SSI supplements to be administered by the federal government. The agreement establishes several variations of payment levels based on different living arrangements, including one level for persons "living alone" and a lower payment level for persons "living with others." "Living alone" is defined as "living in a private household composed of one eligible individual or one eligible couple." N.Y.Soc. Serv.Law § 209(3)(a). "Living with others" is defined as follows:

"Living with others" shall mean living in a private household composed of an eligible individual or couple and at least one other person; or, with respect to any child who is not the head of a household and who is under the age of eighteen, or under the age of twenty-two if attending school, any living arrangement.

*Id.* § 209(3)(b).

The parties agree that minor children are "persons" within the definition of "living with others" and that the plaintiff's household was properly classified in the lower payment level. They also agree that the basis for the lower payment level is the assumption that the presence of additional persons in the household will lead to a reduced need per individual because of economies of scale.

The plaintiff argues that the assumption does not apply in his case because the persons with whom he resides are his own minor children, whom the plaintiff is legally obligated to support and who in fact depend on the plaintiff for their support. Although the plaintiff concedes that the assumption may be reasonable where the additional persons in the household are legally independent adults, he argues that the lower payment level in his case is not based on a rational distinction between types of living arrangements and their costs and in

addition involves an irrebuttable presumption that his needs are less than those of an SSI recipient who lives alone.

The federal government admits that the category of "living with others" creates a hardship in the plaintiff's case and makes no attempt to challenge plaintiff's assessment of his actual need. But it contends that the generalization is reasonable in most cases and that the plaintiff's hardship is merely "an unfortunate consequence of the administrative necessity to categorize, but consistent with all applicable law." Secretary's Brief at 6. The government states:

> There is no question that those who live with others will, in most cases, have reduced costs. While in any given instance, it might be that the "others" will have little or no income, resources or access to any form of public assistance, it is reasonable to conclude that most persons who live with an SSI beneficiary would have access to some funds, and that they will make a contribution in some amount to meet the expenses of operating a household.

Secretary's Brief at 9–10. The state takes essentially the same position.

■ For the reasons stated below, I find that the state's category does not comply with 20 C.F.R. § 416.2030(b). This finding makes consideration of plaintiff's constitutional claims unnecessary.[3]

## III. THE CLAIM BASED ON FEDERAL REGULATIONS

In determining whether the "living with others" category is based on rational distinctions between both the types of living arrangements and the costs of those arrangements, it is essential to examine the reasons underlying a lower payment level. The assumption is that the per person cost of living will be reduced by the presence of additional persons in the household. The economics of scale rationale has been explained by the New York Court of Appeals in the following terms:

The rationale behind the reduction in amount of grants to recipients in a multiperson household is not obscure. The amount of a grant is directly related to the measure of a recipient's needs. In a multiperson household the per capita cost of many items, since they are shared, will be less. This consequence involves no attribution of the contribution by any one member of the household to the maintenance of any other member. Each contributes his own share to the reduced pooled costs. Nor is any reduction in the standard of living implied.

*Padilla v. Wyman,* 34 N.Y.2d 36, 40, 356 N.Y.S.2d 3, 5, 312 N.E.2d 149, 151 *appeal dismissed,* 419 U.S. 1084, 95 S.Ct. 672, 42 L.Ed.2d 677 (1974) (holding that the prorating of public assistance grants was rational where a recipient of Old Age Assistance resided with two A.F.D.C. recipients). The lower benefit level applicable to SSI recipients "living with others" does not assume that the other household members pay the SSI recipient's pro rata share of expenses but it does assume that they pay their own share of the household's expenses. It follows that the category is valid only if it is rational to assume that in households consisting of an SSI recipient and one or more minor children, the children will pay their own share of the household's expenses.

When the issue is framed in these terms, it becomes obvious that the category makes no sense in situations such as the plaintiff's. It may well be rational for the state to assume that an SSI recipient living with other adults will have reduced costs. To a large degree, the federal benefit scheme already takes this possibility into account by reducing the benefits by one-third for recipients living in another person's household and receiving support and maintenance, 42 U.S.C. § 1382a(a)(2)(A), and by reducing benefit levels by the recipient's actual income, whether in cash or in kind. *Id.* § 1382. It may also be rational for the state to assume that an SSI recipient who is under eighteen and not the head of a house-

---

**3.** Given the similarity between the plaintiff's equal protection claim and his claim based on

20 C.F.R. § 416.2030(b), the result would be the same.

hold will have reduced costs. But it is patently irrational to assume that the SSI recipient's per unit cost will be reduced when he shares his household with his minor, dependent children. To the contrary, his needs are likely to increase because he is legally obligated to care for his children. *N.Y.Dom.Rel.Law* § 32. Children have many needs, for such items as food, clothing, medicine, education and transportation, which are independent of the parent's needs but for which the parent is obligated to provide. When the head of the household is obligated to support the other members, it is artificial to regard the parent's costs as only a prorated share of the household's costs. The parental support obligation acknowledges that children are not capable of supporting themselves or of contributing in any way toward the household's expenses.

■ It is clear that the original purpose of the "living with others" category was to provide for situations in which an SSI recipient resides with adults, who might have access to outside income and contribute to household expenses. The household arrangement in this case is relatively rare, because most SSI recipients do not have minor children in their care. It is doubtful that the legislature ever contemplated applying the category to a household such as the plaintiff's.

■ Citing *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), and several later Supreme Court decisions, the defendants argue that the category represents a reasonable generalization which is not rendered invalid by the hardship it may generate in an individual case. I agree that 20 C.F.R. § 416.2030 does not necessarily require categories designed by the states to fit the economic situation of every individual SSI applicant. A classification is not irrational because it "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369, quoted in *Dandridge v. Williams, supra,* 397 U.S. at 485, 90 S.Ct. 1153. The standards enunciated in *Dandridge v. Williams* for

determining whether a classification is rational under the equal protection clause are equally applicable to 20 C.F.R. § 416.2030. But the plaintiff is not simply arguing that the category creates a hardship in his individual case. The arbitrariness which the plaintiff asserts extends to a class of SSI recipients who have similar household compositions: aged, blind or disabled parents caring for minor children or grandchildren in their home. Although this household arrangement may be less common than others, it is by no means unique to the plaintiff and is readily definable in categorical terms. It is not rational to categorize this group of recipients as "living with others" because the category assumes a reduced need in situations in which need increases.

It is true that the children of SSI recipients will normally be eligible for A.F.D.C. The hardship imposed on the plaintiff would of course be reduced if A.F.D.C. benefit levels were more generous. But it nevertheless is irrational to ignore the increased need of the SSI recipient and to assume that other benefit programs, which are known to be inadequate, will enable the children to bear their share of the household's increased costs. The defendants do not challenge the plaintiff's contention that the children's income (social security and A.F.D.C.) is totally absorbed by their needs.

Other provisions of the SSI program plainly acknowledge that the presence of children in the household places an additional strain on the resources of the SSI recipient. For example, when an eligible individual resides with an ineligible spouse, the spouse's income is deemed available to the recipient but an exemption of $89 per month is allowed for each ineligible child under 21 in the household. 20 C.F.R. § 416.1185(a). Similarly, in determining the income of a child SSI recipient, the parent's income is deemed available to the child but an exemption of $89 per month is allowed for each ineligible child in the household. *Id.* § 416.1185(b). These exemptions apply even if the ineligible child receives A.F.D.C. or other forms of public assistance. *Id.* § 416.1185(c). Finally, under state law, fos-

ter parents are classified as "living alone" rather than "living with others." The purpose of this provision is to avoid penalizing foster parents for accepting foster children.

These provisions do not use the SSI program to subsidize inadequate benefit levels of other public assistance programs but simply reflect a realistic judgment of increased need. They also reflect Congress' general purpose or design to take into account increased needs created by children in the household and to provide economic incentives rather than disincentives for single individuals to live with and care for their own children. The "living with others" category, as applied to recipients with minor children, is inconsistent with these policies.

In support of his position, the plaintiff cites a number of cases which have invalidated presumptions of reduced need in the A.F.D.C. and related programs. *Van Lare v. Hurley*, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975); *Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); *Hoehle v. Likins*, 405 F.Supp. 1167 (D.Minn.1975), *aff'd*, 538 F.2d 229 (8th Cir. 1976). *See also King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *Mothers and Childrens Rights Organization v. Stanton*, 371 F.Supp. 298 (N.D.Ind.1973); *Marotti v. White*, 342 F.Supp. 823 (D.Conn. 1972). The defendants are correct in pointing out that these cases are not on all fours with this case. The A.F.D.C. program requires that "only such net income as is actually available for current use on a regular basis" shall be considered in determining financial eligibility, 45 C.F.R. § 233.90, and it was this requirement which provided the basis for these court decisions. *See also* 42 U.S.C. § 602(a)(7). The SSI program has no specific statutory or regulatory prohibition on a presumption of reduced need but only requires that payment levels be based on "rational distinctions" between the types and costs of living arrangements. *Van Lare v. Hurley, supra,* nevertheless condemns the use of conclusive presumptions to the effect that persons residing with public assistance recipients contribute toward household expenses and can be read to provide some support for the result reached in this case.

*Hamilton v. Califano,* No. 77–2157 (D.N.J. Apr. 17, 1978), provides additional support for the plaintiff's position. In that case, a preliminary injunction was issued prohibiting New Jersey from enforcing a state regulation which provided that SSI recipients who lived with others but were not subject to the federal one-third reduction could not receive state supplements. Relying on *Van Lare v. Hurley*, the court concluded that the state may not conclusively presume a contribution to household expenses from nonrecipients. It found that the regulation violated 20 C.F.R. § 416.2030(b) because by definition the regulation excluded only those SSI recipients who received no contributions. The facts in this case are even stronger than in *Hamilton* because the plaintiff is legally obligated to support the other members of his household.

Accordingly, the plaintiff's motion for summary judgment is granted and the defendants' motions are denied.

## IV. APPROPRIATE RELIEF

SSA's determination is reversed, and the agency is enjoined from classifying the plaintiff (as his household existed as of July 1, 1977) as "living with others" rather than "living alone." *Cf. Galvan v. Levine,* 490 F.2d 1255, 1261 (2d Cir. 1973).

The parties are directed to discuss appropriate relief, including plaintiff's application for fees. After these discussions, the United States Attorney shall prepare a judgment for signature on or before February 22, 1979. If the parties cannot agree on a reasonable attorney's fee, the plaintiff shall file an affidavit before that date in support of that application.

So ordered.