Robin McCOOG, et al., Plaintiffs,

v.

Leo T. HEGSTROM, et al., Defendants.

No. 78–789–FR.

United States District Court,
D. Oregon.

Dec. 16, 1981.

Amy Veranth, Multnomah County Legal Aid, Kent B. Thurber, Oregon Legal Services Corp., Portland, Or., Jan Perkins, Oregon Legal Services Corp., Klamath Falls, Or., Ken Pollack, Oregon Legal Services Corp., Roseburg, Or., Marilyn Lindgren, Oregon Legal Services Corp., Hillsboro, Or., Hilary Frazier, Oregon Legal Services Corp., Albany, Or., for plaintiffs.

Dave Frohnmayer, Atty. Gen., Karen H. Green, Asst. Atty. Gen., Salem, Or., for defendants.

FRYE, District Judge:

## INTRODUCTION

This is a class action case brought by children who receive Aid to Dependent Children (ADC) assistance. These children live with caretaker relatives who are not included in the ADC grant. The children challenge the state's reduction in the shelter component of their grants on the grounds that the reduction violates federal statutes and regulations and conflicts with various constitutional provisions. The case can be decided on statutory grounds.

## HISTORY OF THE CASE

In September, 1978, the plaintiffs sought and obtained a temporary restraining order enjoining the defendants from implementing a newly adopted state rule that would result in the reduction of benefits to the children. The trial court (Judge Belloni) denied a permanent injunction and dismissed the case. The plaintiffs appealed, and the Court of Appeals remanded, stating that a fuller development of the facts was necessary. The parties have now filed an extensive Joint Stipulation of Facts.[1] The case is now before the court on cross-motions for summary judgment.

## THE CHALLENGED RULES

The ADC program is a joint federal-state program established under the Social Secur-

1. Cited as "stip."

ity Act, 42 U.S.C. § 601, et seq. It provides monthly financial support for needy children.

The amount of the ADC grant is the sum of five components: shelter, food, clothing, household supplies, and personal incidentals. Oregon has a "flat grant" system, meaning that all families of the same size with no outside income receive the same amount, which is based on a survey of living costs. Outside income is deducted from the grant, usually dollar for dollar. The amount of the shelter allowance, at issue in this case, increases in progressively smaller increments for each additional person in the ADC family.

In October, 1978, the State adopted the non-needy relative rule. That rule reduced benefits to children living with a caretaker relative who was not receiving ADC benefits for his or her own needs; exceptions were made where the caretaker relative was receiving Supplemental Security Income or had been removed from the grant as an administrative sanction. (Stip. 4). The rule only applied to children living with caretaker relatives who were not legally responsible for supporting the children (Stip. 5).

The rule reduced by approximately $100 per month the shelter and food portions of the ADC grant. The reduction was based on the State's determination that the caretaker relative should pay a majority of the shelter costs and some of the common food items. (Stip. 7). The children received only the incremental increase that their addition to an ADC household would represent. The grant was reduced without consideration of individual families' housing situations, irrespective of whether the children moved into the caretaker relative's home or the caretaker relative moved into the children's home. (Stip. 8).

Hardship exceptions were available, but they had to be requested; families were not notified of the availability of these exceptions; and there were no written standards for determining when exceptions would be granted. (Stip. 13, 17, 9).

In determining whether to grant hardship exceptions, there was no consideration of the fact that the caretaker relative had moved into the children's home, or that the caretaker relative was unable or unwilling to support the children or subsidize their shelter expenses. (Stip. 16).

Families affected by the rule could request a hearing, but reduction of the grant would be reversed only upon a showing that the caretaker relative had been incorrectly classified as non-needy, meaning that his or her needs were actually included in the grant. (Stip. 20).

In 1979, the Oregon Legislature enacted Senate Bill 147, which made stepparents legally responsible for the support of their stepchildren. This removed approximately 5,300 cases from the effect of the non-needy relative rule.

On July 1, 1980, the State abolished the non-needy relative rule and adopted the No Adult standard. The No Adult standard is fundamentally the same as the non-needy relative rule. The shelter allowance is calculated basically the same way, except that the number of persons in the caretaker relative's family who are not included in the grant are not considered in determining the amount of the grant. The No Adult standard also differs from the non-needy relative rule in that it applies to previously exempted categories—where the caretaker relative is legally responsible for supporting the children, but is not included in the grant because he or she (a) receives SSI; (b) was removed from the grant as an administrative sanction; (c) voluntarily elected not to receive ADC for himself; (d) is an undocumented citizen of another country; or (e) had secured an exception to the non-needy relative rule. (Stip. 4, 26).

Like the non-needy relative rule, grants were reduced without regard to the individual families' housing situations and without regard to whether the children moved in with the caretaker relative or the caretaker relative moved in with the children. (Stip. 28). Hardship exceptions were available on the same basis as under the non-needy relative rule. Hearings were available, and

reversals were made only if there was an adult included in the grant.

On October 1, 1980, the State changed its rule again, but for purposes of this lawsuit, the new standards do not differ significantly from the previous. standards; the No Adult standard continues to exist and is applied in the same manner. (Stip. 38).

## DISCUSSION

■ When a state chooses to participate in the ADC program, it obligates itself to conform to the provisions of the Social Security Act and its implementing regulations. *Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); *King v. Smith*, 392 U.S. 309, 317, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968).

*State Rules as Applied to Children Living with Non-Legally Responsible Caretaker Relatives*

The federal regulations implementing the Social Security Act require that:

" . . . the money amount of any need item included in the standard will not be prorated or otherwise reduced solely because of the presence in the household of a *non-legally responsible* individual; and the agency will not assume any contribution from such individual for the support of the assistance unit." (Emphasis added.)

45 C.F.R. § 233.20(a)(2)(viii).

The regulations also provide:

" . . . the presence in the home, of any "substitute parent" or "man in the house" or any individual other than [a natural or adoptive parent or stepparent] is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the state; nor may the State agency prorate or otherwise reduce the money amount of any need item included

in the standard on the basis of assumed contributions from *non-legally responsible individuals* living in the household.

"In establishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered and the income only of the parent described in the first sentence of this paragraph will be considered available for children in the household in the absence of proof of actual contributions." (Emphasis added.)

45 C.F.R. § 233.90(a)

Section 233.90(a) was adopted after the Supreme Court's decision in *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118. There, the Court struck down Alabama's "substitute father" regulation, which denied ADC benefits to families where the mother cohabited with an able-bodied man, whether or not that man was legally obligated to support the children. The man was considered by Alabama to be a "parent" under 42 U.S.C. § 606(a), who was not absent from the home.[2]

Alabama attempted to justify the regulation on the ground that it put families in which there is an informal marital relationship on a par with those in which there is a formal marriage. *Id.* at 318, 88 S.Ct. at 2133–2134. But the Court held that the term "parent" in § 606(a) was intended by Congress to mean only a person with a legal obligation to support the child. *Id.* at 327, 88 S.Ct. at 2138. The Social Security Act was intended to provide economic security for needy children; the only kind of "parent" whose presence in the home would provide adequate economic protection for a dependent child is one who is legally obligated to support him. *Id.* at 332, 88 S.Ct. at 2141.

In *Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561, the Supreme Court

---

**2.** 42 U.S.C. § 606(a) provides:

"(a) The term "dependent child" means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home."

held that § 233.90(a) is valid and struck down a California rule that income of a non-legally obligated stepfather or "adult male person assuming the role of spouse" (MARS) must be considered in computing the payments to needy children. The Court held,

> "In the absence of proof of actual contribution, California may not consider the child's 'resources' to include either the income of a nonadopting stepfather who is not legally obligated to support the child as is a natural parent, or the income of a MARS—whatever the nature of his obligation to support."

*Id.* at 559–60, 90 S.Ct. at 1285–1286.

Section 233.90(a) prohibits a state from reducing the shelter component of the grant because a person who is not included in the grant shares the home with the ADC family. *Van Lare v. Hurley*, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975). The Supreme Court struck down a New York rule providing that the ADC family's shelter allowance would be reduced to a pro rata share of the regular shelter allowance when a non-legally responsible person lived in the household and did not pay rent. The Court held that the New York rule was based on the assumption that the non-paying lodger is contributing to the welfare household, without inquiry into whether he in fact does so. *Id.* at 346, 95 S.Ct. at 1747. This constituted an "impermissible means of applying available income and resources." *Id.*

The Oregon rules at issue here, both the non-needy relative rule and the No Adult standard, reduce the shelter component of the ADC grant because the children live with non-legally responsible relatives who are not included in the grant. On their face, the rules clearly violate 45 C.F.R.

§ 233.90(a) as interpreted in *Van Lare*. They are based on the assumption that the caretaker relative is meeting his own needs (Defendant's brief at 3, 7, 15), without inquiry into whether he in fact does so. (Stip. 8, 28).

The State argues, however, that the non-legally obligated person from whom income cannot be presumed does not include a non-legally obligated caretaker relative. It argues that the regulation must be interpreted to prohibit only the state's assumption of contribution from non-legally responsible persons who live in the ADC household *other than* the non-needy caretaker relative himself or herself. (Defendant's brief at 17).

The lower courts have split on the issue of whether states may reduce the child's shelter allowance when the child lives with a non-needy, non-legally obligated caretaker relative. The best case for the defendants is *Johnson v. White*, 528 F.2d 1228 (2d Cir. 1975). In that case the court held that the state could pay a lower shelter allowance to ADC children living with non-needy, non-legally obligated relatives, even after *Van Lare. Id.* at 1237.[3]

The defendants also cite *Houston Welfare Rights Organization v. Vowell*, 555 F.2d 1219 (5th Cir. 1977) in support of their argument. In that case, the plaintiffs challenged a Texas policy similar to the New York regulation struck down in *Van Lare*, under which the state reduced the shelter allowance when non-eligible persons shared the household with the ADC family. The court held that *Van Lare* prohibited a reduction when a non-recipient joined an ADC family, but did not prohibit a reduction when a recipient lived with non-recipients in *their* shelter. *Id.* at 1224–25.

---

**3.** That case arose in the context of a challenge to the figures used to determine the amounts that would be paid to a family of a given size when Connecticut switched to the "flat grant" system. The amount of the grant for each size of assistance unit was determined by averaging a random sample of sums budgeted for families of that size under the prior program. *Id.* at 1230. The plaintiffs challenged the figures arrived at on the grounds that the random samples included some rental allowances that were unlawful under the statute and HEW regulations. *Id.* at 1236. One of those was the lower allowance for children living with non-needy, non-legally obligated caretaker relatives. *Id.* The court stated that the allowance did not conflict with federal law or regulations. *Id.* at 1237.

That case does not clearly support Oregon's rule for several reasons. First, the Texas policy was valid only when the recipient moved in with the non-recipient; the parties have stipulated here that both the non-needy relative rule and the No Adult standard apply when the move is either way. Second, the Fifth Circuit upheld the rule as applied only when "a recipient lives with non-dependent relatives in *their shelter*," *Id.* at 1224 (emphasis added), indicating that the non-recipient's shelter is, *in fact*, already established. The court did not address the situation where both move into a new shelter, or the non-recipients are forced to add onto the existing home to accommodate the ADC children. (*See* Affidavit of Ruth L. Akles, Affidavit of Martha J. Lindberg.) Finally, the Texas policy only produced a pro rata reduction in the shelter allowance. The Oregon rules require the caretaker relative to meet all the initial costs of establishing the household.

Two cases support the plaintiff's position. In *Jenkins v. Georges*, 312 F.Supp. 289 (W.D.Pa.1969), the court held that a Pennsylvania regulation allocating a reduced shelter allowance to ADC children living with non-legally responsible adults who were not welfare recipients, on the theory that the adult pays the fixed overhead expenses, unlawfully assumed the availability of the non-recipient adult's resources for the child.[4]

In *Boucher v. Minter*, 349 F.Supp. 1240 (D.Mass.1972), the court struck down a state regulation that reduced the shelter allowance when there was no adult in the recipient group. In that case the grant was reduced when the mother remarried and her new husband became legally obligated to support her, so her needs were no longer included in the grant. Under Massachusetts law the new husband as stepfather was not legally obligated to support the children. The court held that the reduction unlawfully presumed income from the non-

legally obligated stepfather. It also held that the state's assertion, which is also made by the State of Oregon in this case, that the children alone did not constitute an ADC "family" was wrong; the mother remains the head of the family even though her needs are not included in the grant, and the shelter needs of the children remain the same. The state's presumption that the children no longer needed a shelter allowance and that household expenses would be paid by the stepfather was "unrealistic and arbitrary." *Id.* at 1244.

The State's argument here is primarily based on the definition of "dependent child" in 42 U.S.C. § 606(a), which provides that a child must be living in a residence maintained by a caretaker relative as his "home" in order to be eligible for benefits. The State argues that this permits it to assume that the caretaker relative is making a contribution to the dependent child's needs by establishing his own household to which the dependent child is added.

But the definition of "home" in the federal regulations does not permit such an assumption. 45 C.F.R. 233.90(c)(v)(B) provides:

> "A home is the family setting maintained or in the process of being established, as evidenced by assumption and continuation of responsibility for day to day care of the child by the relative with whom the child is living..."

The focus is on day to day care, not financial support. The regulations do not require the caretaker relative to be meeting his own shelter needs, or to pay the initial overhead costs of establishing a household.

But more importantly, the State's interpretation of the regulations would conflict with the purpose of the Act and the rationale of *King v. Smith* and *Van Lare*. Congress' primary goal in establishing the ADC program was to provide economic security for needy children. *Van Lare*, 421 U.S. at

---

4. At the time that case was decided, Pennsylvania was not using a flat grant system *See Gurley v. Wohlgemuth*, 421 F.Supp. 1337, 1342 (E.D.Pa.1976). (Pennsylvania adopted the flat grant system on April 1, 1974.) The rationale of the decision, that the rule conflicts with federal regulations by making an impermissible assumption of income, would apply equally if the reduction were made under a flat grant system.

345, 95 S.Ct. at 1746–1747. Where there is no legal obligation to support the child, there is no assurance of economic security for the child. *King*, 392 U.S. at 332, 88 S.Ct. at 2141. The federal regulations insure that welfare benefits will not be reduced without a guarantee that the child will be receiving the income upon which the reduction is based. *Lewis v. Martin*, 397 U.S. at 559, 90 S.Ct. at 1285–1286.

The fact that the non-legally obligated adult is the caretaker relative does not insure that the child is receiving support from that relative in the form of payment of all initial costs of establishing a household. The definitions of "dependent child" and "home" in the statute and regulations do not impose any such requirement on the non-legally obligated caretaker relative. That relative has complete discretion over the use of his income, and he may choose to live in a home which would not be considered adequate even for his own needs. He may be spending less than the state's shelter allowance for an adult. If so, children subject to the state's non-needy relative or No Adult rules are penalized viz-a-viz other ADC children. *Cf. Boucher v. Minter*, 349 F.Supp. at 1244–45.

To meet the goal of providing economic security for the child, the federal regulations must be interpreted to include the non-legally responsible caretaker relative as a person from whom income cannot be presumed. When the State reduces the shelter allowance of children living with non-legally responsible caretaker relatives, it makes an impermissible presumption of income. *See Van Lare*, 421 U.S. at 346, 95 S.Ct. at 1747. The State's non-needy relative rule and the No Adult standard, which mandate the reduction, violate federal regulations.

The State attempts to justify its rules on the basis that they are necessary to prevent ineligible persons from receiving benefits through the grant to the child. (Defendant's brief at 6–7). But in *Van Lare* the Supreme Court held that the state may not

penalize the children in order to reach other goals.

"The only victim of the state regulations is thus the needy child who suffers reduced benefits. But States may not seek to accomplish policies aimed at lodgers by depriving needy children of benefits."

421 U.S. at 347–48, 95 S.Ct. at 1747–1748.

*State Rule as Applied to Children Living with Legally Responsible Caretaker Relatives Who are not Included in the Grant.*

The No Adult standard differs from the non-needy relative rule in that it applies to children living with a parent or other legally responsible adult whose needs are not included in the grant because (1) he has been removed from the grant as an administrative sanction; (2) he is receiving SSI; (3) he has voluntarily elected not to receive ADC benefits for his own needs; or (4) he is an undocumented alien.

As applied to a child living with a caretaker relative who has been removed from the grant as an administrative sanction, the No Adult standard violates 45 C.F.R. § 233.-20(a)(3)(ii)(D). That regulation provides:

"[I]n determining need ... net income available for current use and currently available resources shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance."

The No Adult standard considers available to the child income of the caretaker relative which is not actually available, and in fact does not exist. *Cf. Martinez v. Maher*, 485 F.Supp. 1264, 1270 (D.Conn. 1980). In *Martinez*, the court struck down a similar Connecticut rule, stating that the case differed from *Van Lare* and *Lewis v. Martin*, "only by virtue of an even greater lack of rationality." *Id.*[5]

---

5. This rationale also applies to make the No Adult standard invalid where the state has reduced the grants to children living with caretaker relatives whose needs are not included in the grant because they have voluntarily elected

As applied to children living with an adult whose needs are not included in the grant because he or she received SSI, the No Adult standard violates 42 U.S.C. § 602(a)(24). This regulation prohibits the state from taking into consideration in any way the presence of an SSI recipient in an ADC household when computing the ADC recipient's award.[6]  *Id.* at 1272. By reducing the child's grant because he lives with an SSI recipient adult, the state is taking into account the presence of the SSI recipient in the household.  *Id.*

### Effect of PL 96–262

◼ Effective June 17, 1980, Congress amended the Social Security Act to allow states to reduce shelter allowances pro rata where a child lives with a relative who is not receiving ADC benefits. Adoption Assistance & Child Welfare Act of 1980, PL 96–272, § 303, 94 Stat. 500 (1980) (codified as 42 U.S.C. § 612).[7]  Thus, Oregon may now reduce the shelter allowance of children living with non-legally obligated caretaker relatives to a pro rata share of the total household expenses.

Such a reduction may not be made, however, if the caretaker relative is a legally obligated adult who is not included in the grant because he or she is receiving SSI or has been removed as an administrative sanction.

In the case of an adult receiving SSI, this is mandated both by 42 U.S.C. § 612(b)(1) and 42 U.S.C. § 602(a)(24). Section 612(b)(1) provides that the amendment permitting a pro rata reduction does not apply when the adult is receiving benefits "under another public program eligibility for which is based on need." Section 602(a)(24) prohibits the state from considering the SSI recipient as a member of the ADC household for the purpose of determining the needs of that household.

Where the adult has been removed from the grant as an administrative sanction, reduction of the shelter allowance is prohibited because the language of § 612(a)(2)(B) expressly permits the reduction only when the legally responsible caretaker relative is not included in the grant because he or she "is being supported by another person or under another program." It makes sense that Congress would not want to permit a reduction in those cases where the adult cannot contribute anything to the household expense; this would penalize the child for the acts of the parent or other legally responsible caretaker relative.

### REMEDY

◼ The state's non-needy relative rule and No Adult standard are declared to be invalid because they conflict with federal law and regulations. The state is enjoined

not to receive benefits for their own needs, or because they are undocumented aliens.

**6.** 42 U.S.C. § 602(a)(24) provides:

"[I]f an individual is receiving [SSI] benefits under subchapter XVI of this chapter, then, for the period for which such benefits are received, such individual shall not be regarded as a member of a family for [the purpose] of determining the amount of the benefits of the family under this subchapter and his income and resources shall not be counted as income and resources of a family under this subchapter."

**7.** The statute now provides:

"(a) Notwithstanding any other provision of this part, a State plan for aid and services to needy families with children shall not be regarded as failing to comply with the requirements imposed under this part solely because, under such plan, in any case in

which one or more children live in any household—. . .

"(2) which (A) does not include a relative (specified in section 606(a)(1) of this title) who is legally responsible for the support of the child or children, or (B) includes one or more such relatives who is legally responsible for the support of the child or children but none of whom is eligible for aid under the State plan because such relative is being supported by another person or under another program,

"the amount of the aid furnished with respect to such child or children for shelter, utilities, and similar expenses, bears the same ratio to the total amount which would be furnished for such expenses, if all the closely related family members with whom such child or children are living were eligible for such aid, as the number of such children bears to the total number of such children and closely related family members."

from enforcing these rules. The state is not required, however, to pay back benefits to the children who have been affected by this rule because such relief is prohibited by the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Houston Welfare Rights Organization v. Vowell*, 555 F.2d at 1227.

IT IS HEREBY ORDERED:

1. Plaintiffs' motion for summary judgment is granted;

2. Defendant's motion for summary judgment is denied;

3. The State of Oregon's non-needy relative rule and No Adult standard are declared to be invalid, and the State is enjoined from enforcing these rules.

4. The clerk is directed to enter judgment in favor of plaintiffs and against defendant.