690 F.2d 1280
 Robin, Cathie, and Candy McCOOG, minor children, By and
Through their mother and next friend, Eileen FERGUSON;
Rhonda, Jerome, and Chago Ackles and Loretta Williams, minor
children, by and through their grandfather and next friend,
James Ackles; Eric and Jason Howard, minor children, by and
through their mother and next friend, Linda Tyson; Carl
Brown and Cheryl McFarland, et al., Plaintiffs-Appellees,
v.
Leo HEGSTROM, individually and in his capacity as Director
of the Department of Human Relations of the State of Oregon,
Keith Putman, individually and in his capacity as Assistant
Director of Adult and Family Services Division of the State
of Oregon, et al., Defendants-Appellants.
 No. 81-3709.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 3, 1982.
Decided Oct. 26, 1982.
 
 Karen H. Green, Asst. Atty. Gen., Salem, Or., for defendants-appellants.
 Amy Veranth, Portland, Or., for plaintiffs-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before SNEED, and SKOPIL, Circuit Judges, and STEPHENS*, District Judge.
 SNEED, Circuit Judge:
 
 
 1
 This is a class action brought under 42 U.S.C. § 1983 by a group of needy dependent children to challenge the validity of rules promulgated by the State of Oregon's Department of Human Resources, Adult and Family Services Division (AFS). The AFS rules reduce the shelter component of the Aid to Dependent Children (ADC) grant when children receiving ADC benefits live with caretaker relatives who are not included in the ADC grant and are not legally responsible for the children's support. The district court granted summary judgment in favor of plaintiffs, holding that the Oregon rules violate the Social Security Act, 42 U.S.C. §§ 601-615, and the federal regulations implementing them. 528 F.Supp. 575. We affirm.
 
 I.
 FACTS
 
 2
 Aid to Dependent Children,[1] established by Title IV of the Social Security Act, 42 U.S.C. §§ 601-615, is a jointly funded federal-state program. Its purpose is to encourage "the care of dependent children in their own homes or in the homes of relatives" by providing funds "to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection ...." Id. § 601.
 
 
 3
 The ADC program is based on financial need. Dependent children are eligible for a grant if their income and resources are less than a set minimum subsistence level. In addition, to qualify for ADC benefits, the children must be deprived of parental support because of the absence or incapacity of a parent, and live in the home of a "caretaker relative"-the other parent, a stepparent, sibling, or other close relative. Id. § 606(a)(1). If the caretaker relative is also needy, he or she can be added to the grant.
 
 
 4
 The Oregon ADC grant consists of allowances for shelter, food, clothing, household supplies, and personal incidentals.[2] While each state participating in the ADC program has the option of calculating ADC benefits on an individualized basis, Oregon, like most states, has chosen, presumably for administrative convenience, to use a "flat grant" system. Under this system, ADC benefits are awarded according to the size of the family, without regard to the actual cost to the family of food, shelter, and other expenses. Moreover, if an ADC recipient receives any income-earnings, Social Security payments, gifts, and so on-that income is usually deducted from the grant.
 
 
 5
 On October 1, 1978, Oregon instituted its previously proposed Rule 461-06-008,[3] the so-called non-needy relative rule, which reduced the ADC benefits paid to children whose caretaker relatives were not eligible for welfare assistance.[4] The rule only affected cases in which the caretaker relative was not legally responsible for the support of the children, since the income and resources of relatives who are legally responsible for the children were already attributed to the children in computing eligibility for the ADC grant.
 
 
 6
 The non-needy relative rule reduced the food and shelter components of the ADC grant of approximately 6,990 needy children by about $100 a month in 1978.[5] It accomplished this by assuming that the caretaker relative already would be paying for food and shelter, and that the cost of an additional child in the household would merely be incremental. In making this assumption, the rule did not consider the resources of the caretaker relative, and did not distinguish between cases in which the needy child moved in with the relative, and those in which the relative moved into the home of the child.
 
 
 7
 In 1979, the Oregon Legislature further tightened ADC eligibility by enacting Senate Bill 147, which made stepparents legally responsible for the support of their stepchildren. Because of this, approximately 5,300 cases lost their eligibility for ADC benefits, since the stepparents' income became available to the children for the purpose of calculating the ADC grant.[6]
 
 
 8
 AFS repealed the non-needy relative rule on July 1, 1980, and promulgated ADC Payment Plan D, which includes the No Adult standard. The No Adult standard is substantially identical to the non-needy relative rule, differing from its predecessor in four principal areas. First, the No Adult standard applies to all non-needy relative cases where an adult is living in the household, including those excepted from the earlier rule.[7] This reduces ADC benefits in approximately 800 cases that were not affected by the non-needy relative rule. Second, the No Adult standard causes no reduction in the food component of the ADC grant. Third, the No Adult standard does not consider either the number of persons in the caretaker relative's family who are not included in the ADC grant or tax allowances for welfare recipients in determining the amount of the grant. Finally, as was the case with the non-needy relative rule, under the No Adult standard the children do not receive a pro rata shelter allowance,[8] but only the much smaller incremental shelter grant. However, the method of calculating the increment differs slightly between the two rules.[9]
 
 
 9
 As a result of the new standard, ADC recipients whose grants were reduced by the non-needy relative rule received in July, 1980 an average of $20.00 more a month. However, that sum was still $144.00 less than it would have been had neither rule been applied.[10]
 
 
 10
 On October 1, 1980, AFC reduced ADC grants by 21% across the board. AFS also amended its rules, but did not alter the No Adult standard in any significant way.
 
 
 11
 In the meantime, the Department of Health, Education and Welfare, on May 25, 1979, formally disapproved the non-needy relative rule as being in conflict with 45 C.F.R. §§ 233.20(a)(2)(viii) and 233.90(a). Notwithstanding this disapproval the Department of Health and Human Services thereafter approved the No Adult Standard on February 10, 1981, despite the similarity between the two AFS rules.
 
 
 12
 Plaintiffs filed this action in August, 1978, seeking declaratory and injunctive relief against the then proposed non-needy relative rule. The district court issued a temporary restraining order to enjoin the defendants from enforcing the rule, but denied a permanent injunction and dismissed the case. Plaintiffs appealed to this court. After briefing and oral argument, we declined to reach the merits of the plaintiffs' claims, and remanded this case to the district court to develop a more complete factual record.
 
 
 13
 On remand, the plaintiffs filed a supplemental amended complaint challenging both the non-needy relative rule and the new No Adult standard. The parties filed a joint stipulation of facts, summarized above. The district court granted plaintiffs' motion for summary judgment, declaring both the non-needy relative rule and the No Adult standard to be invalid because they conflict with the Social Security Act and federal regulations, and enjoining enforcement of the Oregon rules. Defendants appeal.
 
 II.
 
 14
 DEFERENCE DUE AGENCY'S INTERPRETATION OF ITS REGULATIONS
 
 
 15
 An agency's interpretation of its own regulations is entitled to considerable deference by the courts. Quern v. Mandley, 436 U.S. 725, 738, 98 S.Ct. 2068, 2076, 56 L.Ed.2d 658 (1978). But an agency's interpretations are not conclusive, and courts are not bound by them. Social Security Board v. Nierotko, 327 U.S. 358, 369, 66 S.Ct. 637, 643, 90 L.Ed. 718 (1946). In particular, the deference due an administrative interpretation depends upon its consistency with earlier agency pronouncements, Morton v. Ruiz, 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974), the purpose and wording of other agency regulations, Pacific Coast Medical Enterprises v. Harris, 633 F.2d 123, 131 (9th Cir. 1980), and the purposes of the relevant statutes. United States v. Larionoff, 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977).
 
 
 16
 Because the Department's approval of the No Adult standard is inconsistent with its earlier disapproval of the non-needy relative rule, as well as with the policies behind the Social Security Act, we hold that our deference does not require an acquiescense in the Department's approval of the No Adult standard.
 
 III.
 
 17
 THE SOCIAL SECURITY ACT AS APPLICABLE TO CHILDREN LIVING
 
 
 18
 WITH NON-LEGALLY RESPONSIBLE CARETAKER RELATIVES
 
 
 19
 The ADC program is funded on a matching basis by the federal government. A state is not required to participate in the program, but once it chooses to do so, the Supremacy Clause obliges it to conform to the requirements of the Social Security Act and federal ADC regulations. Townsend v. Swank, 404 U.S. 282, 285-86, 92 S.Ct. 502, 504-05, 30 L.Ed.2d 448 (1971); King v. Smith, 392 U.S. 309, 316-17, 88 S.Ct. 2128, 2132-33, 20 L.Ed.2d 1118 (1968).
 
 
 20
 In determining the eligibility of a child for ADC benefits, a state must consider the income and resources available to the child, 42 U.S.C. § 602(a) (7), including those of a parent or stepparent who is legally responsible for the child. 47 Fed.Reg. 5648, 5675 (1982) (to be codified at 45 C.F.R. § 233.20(a)(3)(ii)(D)).[11] But "the inclusion in the family, or presence in the home, of any 'substitute parent' or 'man-in-the-house' or any individual other than (a natural or adoptive parent or stepparent) is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State ...." Id. at 5681 (to be codified at 45 C.F.R. § 233.90(a)) (emphasis added).
 
 
 21
 The district court held that both the Oregon rules here being challenged assume the availability of the non-legally responsible caretaker relative's income to the ADC child, and therefore impermissibly reduce the shelter component of the child's ADC grant, in violation of 45 C.F.R. § 233.90(a).[12] The court emphasized that although the Oregon rules presume that the caretaker relative will bear the majority of the costs of setting up a household, the State does not attempt to determine whether the caretaker, in fact, is meeting his own shelter needs when he joins with the child to form an ADC household.
 
 A. Scope of 45 C.F.R. § 233.90(a)
 
 22
 Appellants argue that § 233.90(a) does not apply to caretaker relatives. Its reach, they insist, is limited to the proposition that "lodgers" such as the mother's paramour (or non-legally obligated second husband) may not be presumed to be breadwinners contributing to the ADC child's support. This position is contrary to the plain language of the regulation, which prohibits the state from assuming that the presence in the home of "any individual" other than a parent or stepparent would make income available to the child. Moreover, the decisions involving § 233.90(a) have not distinguished between "lodgers" and caretaker relatives, but between individuals who are legally responsible for the child, with the result that their income can be attributed to the child without an individualized hearing, and all other persons. With respect to these latter persons, the state can attribute their income to the child if, and only if, the state determines that the income is actually available to the child.
 
 
 23
 The validity of these conclusions appears when the relevant cases are examined. Section 233.90(a) was promulgated in response to King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). There the Supreme Court invalidated Alabama's "substitute father" rule, holding that a state could not terminate a child's ADC benefits where the mother was cohabiting with an able-bodied man who was not legally responsible for the ADC child. The Alabama rule considered the man to be a "substitute parent," whose resources could be used to support the child. But the Court explained that while an ADC grant normally may not be awarded if the needy child is living with both parents, the term "parent" is limited to persons with a legal duty to support the child, and does not encompass non-legally responsible individuals. Id. at 327.
 
 
 24
 Similarly, in Van Lare v. Hurley, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975), the Court struck down a New York regulation which required the shelter allowance of an ADC family to be reduced solely because a non-legally responsible individual resided in the household. The Court held that the Social Security Act and § 233.90(a) bar states from "assuming that nonlegally responsible persons will apply their resources to aid the (ADC) child," and that reducing the shelter allowance in such cases constitutes an impermissible attribution of income to the child. Id. at 347, 95 S.Ct. at 1747-48.
 
 
 25
 And in Lewis v. Martin, 397 U.S. 552, 559-60, 90 S.Ct. 1282, 1285-86, 25 L.Ed.2d 561 (1970), the Court held that in "the absence of proof of actual contribution, (the state) may not consider the child's 'resources' to include either the income of a nonadopting stepfather who is not legally obligated to support the child as is a natural parent, or the income of a ('man assuming the role of spouse')-whatever the nature of his obligation to support." See also Nolan v. de Baca, 603 F.2d 810 (10th Cir. 1979), cert. denied, 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814 (1980); Hoehle v. Likins, 538 F.2d 229 (8th Cir. 1976); Comment, 88 Harv.L.Rev. 654, 656 n.18 (1975).
 
 
 26
 Appellants rely on Houston Welfare Rights Organization v. Vowell, 555 F.2d 1219 (5th Cir. 1977), rev'd for lack of jurisdiction sub nom. Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), and Johnson v. White, 528 F.2d 1228 (2d Cir. 1975). In both cases, appellants' reliance is misplaced.
 
 
 27
 Vowell is distinguishable. It involved a Texas rule that reduced the ADC shelter allowance pro rata when non-needy persons shared a household with an ADC family. The court invalidated the Texas rule insofar as it presumed that the non-needy person contributed to the family income. The one exception to the holding was when the ADC family moved into the non-needy person's own home. In the present case, however, the parties have stipulated that both the non-needy relative rule and the No Adult standard apply even when the non-recipient moves into the ADC family's home. In addition, the Oregon rules reduce the ADC shelter allowance on an incremental basis, not pro rata. That is, the extent which the income of the non-needy person is attributed to the child is greater under the Oregon rules than was the case in Vowell.
 
 
 28
 In Johnson, it is true that a state was allowed to reduce the shelter allowance of an ADC child living with non-needy relatives who were not legally responsible for the child. But the Johnson court noted that the state would violate 45 C.F.R. § 233.90(a) were it to attribute income to the ADC child merely because the child lived with a non-needy relative, and the court remanded the case to determine whether there was an impermissible attribution of income. 528 F.2d at 1236-37. See also Swift v. Toia, 461 F.Supp. 578 (S.D.N.Y.1979), aff'd sub nom. Swift v. Blum, 598 F.2d 312 (2d Cir. 1979), cert. denied, 444 U.S. 1025, 100 S.Ct. 687, 62 L.Ed.2d 658 (1980) (state cannot assume the availability of income to an ADC recipient without an individualized hearing). Moreover, the benefit reductions in Johnson, as in Vowell, were pro rata, not incremental. Finally, the Johnson court did not consider the state rules in the light of the ADC program's goal of providing economic security to needy children. See Van Lare v. Hurley, 421 U.S. 338, 345, 95 S.Ct. 1741, 1747, 44 L.Ed.2d 208 (1975).
 
 
 29
 B. Oregon Rules Improperly Attribute Income to the Child
 
 
 30
 Appellants' next argument is that the State does not assume that income is available to the child by holding the caretaker responsible for the majority of housing costs. This argument has two components.
 
 
 31
 First, appellants contend that when the caretaker relative pays the majority of shelter costs, he is not providing "income" to the child within the meaning of 45 C.F.R. § 233.90(a). Appellants miss the point. It is true that when another person, such as a caretaker relative, pays for housing for an ADC recipient, that payment may be counted as part of the recipient's "income and resources." 45 C.F.R. § 233.20(a)(3)(ii). However, a state may not presume that a non-legally responsible person is bearing the cost of housing, but must determine that the housing contribution is actually being made. Lewis v. Martin, 397 U.S. 552, 559-60, 90 S.Ct. 1282, 1285-86, 25 L.Ed.2d 561 (1970); Solman v. Shapiro, 300 F.Supp. 409, 415-16 (D.Conn.), aff'd, 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1976). See also Usher v. Schweiker, 666 F.2d 652, 656 (1st Cir. 1981) (paying the cost of housing is "income" for the purpose of calculating Supplemental Security Income benefits). The flaw in Oregon's rules is that they presume a contribution.
 
 
 32
 Second, appellants assert that since the Social Security Act, 42 U.S.C. § 606(a), requires the child to be living with a caretaker relative to be eligible for ADC benefits, the Act itself presumes that the caretaker will be meeting his own shelter needs, and that the needs of the ADC child will only increase the household's total shelter costs by a small increment. Such a presumption does not follow logically from the requirement. As the district court points out, the regulatory definition of "home," 45 C.F.R. § 233.90(c) (v)(B),[13] does not require the caretaker relative to pay the initial costs of setting up a household, or even to provide for his own shelter expenses. 528 F.Supp. at 580.
 
 
 33
 Requiring the child to live with the caretaker relative does not guarantee that he will provide the home. The federal regulations recognize that where the caretaker has no legal obligation to support the child, he can decide for himself how to spend his income, independent of the needs of the ADC child. See King v. Smith, 392 U.S. 309, 332, 88 S.Ct. 2128, 2141, 20 L.Ed.2d 1118 (1968). Thus, it is improper for the state to assume that income and resources will be pooled to take advantage of economies of scale, Gurley v. Wohlgemuth, 421 F.Supp. 1337, 1346-47 (E.D.Pa.1976), and, in particular, that the caretaker relative has established and paid for a household to which the child is added. Congress's primary goal in establishing the ADC program is to provide economic security for needy children, see Van Lare v. Hurley, 421 U.S. 338, 345, 95 S.Ct. 1741, 1746-47, 44 L.Ed.2d 208 (1975). The Oregon rules threaten that goal by reducing ADC benefits without a guarantee that the child will receive the income upon which the reduction is based. See Lewis v. Martin, 397 U.S. 552, 559-60, 90 S.Ct. 1282, 1285-86, 25 L.Ed.2d 561 (1970).[14]
 
 IV.
 
 34
 EFFECT OF 1980 AND 1982 AMENDMENTS TO THE SOCIAL SECURITY ACT
 
 
 35
 While states normally may not reduce an ADC child's grant solely because of the presence in the household of a non-needy, non-legally responsible individual, Congress amended the Social Security Act in 1980 and again in 1982 to allow states to make a pro rata reduction in an ADC grant when an ADC beneficiary resides with a non-needy person. Adoption Assistance and Child Welfare Act of 1980, Pub.L. No. 96-272, § 303, 94 Stat. 500 (1980); Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97-248, § 155(a), 96 Stat. 324 (1982) (to be codified at 42 U.S.C. § 612).[15]
 
 
 36
 The question arises whether, in enacting the pro rata reduction amendments, Congress indicated that the pro rata rule was but one of several possible plans for decreasing benefits, thereby implicitly authorizing the Oregon system.
 
 
 37
 We think the answer is no. The legislative history of the amendments to the Social Security Act suggests that answer. The Senate Report explains:
 
 
 38
 "AFDC regulations generally prohibit the States from prorating or otherwise reducing the ADC benefit solely because of the presence in the household of an individual who is not legally responsible to support the family. This general prohibition was modified in Public Law 96-272 to allow States to prorate the shelter and utilities portion of the AFDC benefit in the case of "child only" family units, i.e., when the parent is not eligible for assistance. (This amendment) would allow States to prorate the portion of the AFDC grant for shelter and utilities whenever the assistance unit shares the household with other individuals."
 
 
 39
 S.Rep.No.494, 97th Cong., 2d Sess. 49 (1982) (emphasis added). See H.Con.Rep.No.760, 97th Cong., 2d Sess. 448 (1982); H.Con.Rep.No.900, 96th Cong., 2d Sess. 65 (1980), reprinted in 1980 U.S.Code Cong. & Ad.News 1448, 1584-85.
 
 
 40
 Appellants contend that whatever the legislative history of the proration amendment may be, its text implies that other systems of reducing benefits are permissible. Appellants base this assertion on Pub.L. 96-272, which provided, in part, that an ADC plan which prorates "shall not be regarded as failing to comply with the requirements" of the Social Security Act. But this language, whatever its meaning, was eliminated by Pub.L. 97-248, which states only that a plan "may be prorated on a reasonable basis."[16]
 
 
 41
 Thus, the Social Security Act, taken in connection with its legislative history, forbids a state from reducing ADC benefits by more than a pro rata amount because a non-needy, non-legally responsible individual resides in the ADC household. To the extent that the Oregon rules fail to conform to the proration amendments and regulations, they are invalid.
 
 V.
 
 42
 CHILDREN LIVING WITH LEGALLY RESPONSIBLE INDIVIDUALS WHOSE
 
 NEEDS ARE NOT INCLUDED IN THE ADC GRANT
 
 43
 Unlike the non-needy relative rule, the No Adult standard applies to all ADC children who live with a legally responsible adult where the adult's needs are not included in the grant because he (1) is receiving Supplemental Security Income (SSI) benefits, (2) is eligible for ADC benefits but was removed from the grant as an administrative sanction, (3) has voluntarily elected not to receive ADC benefits, or (4) is an illegal alien. The district court held that the No Adult standard was invalid for all four of these categories. We affirm.
 
 A. Persons Receiving SSI Benefits
 
 44
 The statute, 42 U.S.C. § 602(a)(24), clearly prohibits the state from taking into consideration the presence of an SSI recipient in an ADC household when computing the ADC grant:"(I)f an individual is receiving benefits under (SSI), then, for the period for which such benefits are received, such individual shall not be regarded as a member of a family for purposes of determining the amount of the benefits of the family under this subchapter and his income and resources shall not be counted as income and resources of a family under this subchapter."
 
 
 45
 See 45 C.F.R. §§ 233.20(a)(1)(ii), 233.20(a)(3)(x).
 
 
 46
 While Pub.L. 97-242 allows the state to prorate the ADC shelter allowance if an SSI recipient is present in the ADC household,[17] the No Adult standard assumes, as in other situations, that the SSI recipient will pay the majority of shelter costs, not a pro rata share. The No Adult standard therefore violates the prohibition against considering the SSI's recipient's presence in the household for the purpose of computing the ADC grant. See Martinez v. Maher, 485 F.Supp. 1264, 1271-72 (D.Conn.), aff'd per curiam, 631 F.2d 5 (2d Cir. 1980); Nelson v. Likins, 389 F.Supp. 1234, 1238 (D.Minn.1974), aff'd per curiam, 510 F.2d 414 (8th Cir. 1972); Corrigan v. Affleck, 523 F.Supp. 498, 502 (D.R.I.1981).
 
 
 47
 B. Other Persons Not Included in the ADC Grant
 
 
 48
 The pertinent regulation, 45 C.F.R. § 233.20(a)(3)(ii)(D), of course provides that in determining eligibility for ADC benefits, a state shall consider net income and resources that are currently available to the ADC recipient:
 
 
 49
 "Income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance."
 
 
 50
 But where the adult either is removed from the grant as an administrative sanction, or voluntarily elects not to receive the grant, or is ineligible for the grant because he is an illegal alien, such adult does not have the income the grant would provide to support the child. There is no basis under these circumstances for assuming a contribution from the adult to the child. The district court properly recognized this. See 528 F.Supp. at 581. See also Martinez v. Maher, 485 F.Supp. at 1269-71.
 
 
 51
 For all the reasons set forth in this opinion, we hold that Oregon's non-needy relative rule and No Adult standard are invalid. The judgment of the district court is affirmed.
 
 
 52
 AFFIRMED.
 
 
 
 *
 Honorable Albert Lee Stephens, Jr., Senior United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Most states and the federal government refer to ADC as Aid to Families with Dependent Children (AFDC). To avoid confusion, we follow the Oregon usage of "ADC" here
 
 
 [2]
 Since October 1, 1980, the ADC grant has ceased to be divided into these five separate components. But AFS has stipulated that about 30% of each ADC payment applies to shelter expenses
 
 
 [3]
 461-06-008 Standards for Dependent Children Living With a Non-Needy Relative in a Place of Residence Maintained as Their Home
 (1) Definitions:
 (a) Non-Needy relative. A person enumerated in ORS 418.035(1)(c), who is ineligible to receive aid to Dependent Children for his or her needs as a caretaker due to excess income or resources other than any other financial need based program.
 (b) Nuclear family. A family group residing together that consists of the caretaker relative, his or her spouse, and their children living in the home. Not included are other related or unrelated persons in the household.
 (2) The food standard shall be based upon the standard based on the total number of persons including the nuclear family of the non-needy relative and the eligible dependent children.
 (3) The shelter standard shall consist of the difference between: (a) the shelter standard for the total number of persons in the nuclear family of the non-needy relative, including the eligible dependent children, and (b) the total number of persons in the nuclear family of the non-needy relative excluding the eligible dependent children.
 
 
 [4]
 The relatives were determined to be "non-needy" in all cases when there was no adult included in the ADC grant unless the relative was receiving Supplemental Security Income benefits, was removed from the grant as a sanction to enforce welfare requirements, was ineligible for ADC because of illegal alien status, was included in another ADC grant in the same household, or was granted a hardship exception to the rule
 
 
 [5]
 Hardship exceptions to the rule were available, but these were not publicized, and children who lived with a natural parent-80% of the affected cases-were not eligible for an exception. Moreover, in making hardship exceptions, AFS did not consider whether the caretaker relative had moved into the children's home, rather than the children into the caretaker relative's home, and whether the caretaker relative was unable or unwilling to support the children or to subsidize their shelter expenses. Only 24 hardship exceptions were granted from 6,990 cases
 
 
 [6]
 While the stepchildren covered by Senate Bill 147 may have become ineligible for ADC benefits, see 47 Fed.Reg. 5648, 5654-55 (1982), and thus no longer affected by the non-needy relative rule and its successor, both the children and the caretaker relatives continue to be charged with overpayments made when AFS failed to apply the non-needy relative rule to reduce their grant
 
 
 [7]
 See note 4 supra
 
 
 [8]
 In a plan which reduces the child's shelter allowance pro rata, the state sets the child's shelter allowance at a fraction of the family's total shelter allowance equivalent to the ratio the dependent child bears to the total number of persons in the house. For example, if a needy child is receiving $100.00 a month as a shelter allowance and is living in a household of five, his allowance would be reduced by one fifth-$20.00-after a pro rata reduction. In contrast, under the Oregon incremental system, the shelter allowance of a needy child living in a household of five would have been reduced from $157.03 to $9.18 in 1980. Pretrial Order at 47
 
 
 [9]
 The non-needy relative rule calculated the shelter allowance as the difference between the total amount that would be paid for shelter if the ADC children and the caretaker's nuclear family were all eligible for ADC and the amount that would be paid for shelter if only the nuclear family of the caretaker were eligible for ADC. But under the No Adult standard, the shelter grant is the difference between the total amount that would be paid as a shelter allowance if the ADC children and the caretaker relative were all eligible for ADC and the amount that would be paid as shelter if only the caretaker relative were eligible for ADC. In both systems, AFS attributes the majority of shelter costs, rather than a pro rata share, to the caretaker relative
 
 
 [10]
 The $144.00 figure differs from the $100.00 reduction in the 1978 grant noted above because the ADC benefits were increased between 1978 and 1980 to compensate for inflation
 
 
 [11]
 45 C.F.R. § 233.20(a)(3)(ii)(D) provides that income and resources are considered available when the ADC applicant "has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance." An ADC child has such an interest and ability when the child's parent or stepparent has a legal obligation to care for him. 47 Fed.Reg. 5648, 5654 (1982). The regulations in effect before October 1, 1982 made this point explicitly. See 45 C.F.R. § 233.20(a)(2)(viii). After October 1, 1982, this regulation ceased to apply to ADC to allow for proration of the shelter allowance. See 47 Fed.Reg. 41,108, 41,111 (1982) (interim rules)
 
 
 [12]
 The district court also based its decision on a conflict with 45 C.F.R. § 233.20(a)(2)(viii), which no longer applies to the ADC program. See note 10 supra. But the language of § 233.90(a) is sufficient to support both the district court's decision and our affirmance of it
 
 
 [13]
 45 C.F.R. § 233.90(c)(v)(B) provides:
 "A home is the family setting maintained or in the process of being established, as evidenced by assumption and continuation of responsibility for day to day care of the child by the relative with whom the child is living."
 
 
 [14]
 Appellants also argue that the district court's holding requires the state to pay more to children living with non-needy relatives than it does to children living with needy relatives, and that the dependent child's shelter allowance will subsidize the shelter costs of the ineligible relative
 Appellants assert that under the district court's ruling, the ADC grant for children with non-needy caretaker relatives would be $266.54, and only $85.76 for children with needy caretaker relatives. Brief for Appellant at 29. The record, however, does not support this assertion. As of July 1, 1980, the total grant awarded to an ADC family consisting of an ADC child living with a needy caretaker relative was $256.54. Pretrial Order at 37. The grant on that date for a needy child living with a non-needy caretaker relative would have been $213.82 had the district court's ruling then been in effect, or $42.72 less than the total ADC grant to a family consisting of a needy child living with a needy caretaker. Id. at 46. Furthermore, the State is free to switch from its "flat grant" system to an individualized method of computing need and thereby avoid potential inequities. See Roselli v. Affleck, 508 F.2d 1277 (1st Cir. 1974).
 
 
 [15]
 Pub.L. No.97-248 repeals and replaces the proration provision of Pub.L. No.96-272. 42 U.S.C. § 612 now reads: "A State plan for aid and services to needy families with children may provide that, in determining the need of any dependent child or relative claiming aid who is living with other individuals (not claiming aid together with such child or relative) as a household (as defined, for purposes of this section, by the Secretary), the amount included in the standard of need, and the payment standard, applied to such child or relative for shelter, utilities, and similar needs may be prorated on a reasonable basis, in such manner and under such circumstances as the State may determine to be appropriate. For purposes of any method of proration used by a State under this section, there shall not be included as a member of a household an individual receiving benefits under title XVI in any month to whom the one-third reduction prescribed by section 1612(a)(2)(A)(i) is applied."
 
 
 [16]
 New interim federal regulations clarify this. 47 Fed.Reg. 41,108, 41,111 (1982) (to be codified at 45 C.F.R. § 233.20(a)(5)) states:
 "(a) Requirements for State plans.
 (5) Proration of shelter, utilities, and similar needs in AFDC. (i) Provided that the State agency may prorate allowances in the need and payment standard for shelter, utilities, and similar needs when the AFDC assistance unit lives together with other individuals as a household; except that, the State shall not prorate with respect to any person receiving SSI to whom the statutory one-third reduction (section 1612(a)(2)(A)(i) of the Act) is applied.
 (ii) If the State agency elects to prorate allowances for shelter, utilities, and similar needs, the State plan must:
 (A) Define shelter, utilities, and similar needs and describe the procedure which will be used to prorate the allowances;
 (B) Provide that the allowances will be prorated on a reasonable basis; and
 (C) Specify the circumstances under which proration will occur, including a description of which individuals are considered to be living with an AFDC assistance unit as a household."
 The Oregon rules do not conform to § 233.20(a)(5) in that, as the parties stipulate, they do not reduce the ADC shelter allowance pro rata, but by a much larger amount.
 
 
 [17]
 See note 14 supra. The Act excepts from the pro rata rule persons whose SSI benefits are already reduced by one-third under 42 U.S.C. § 1382a because they live in households established by another and receive support and maintenance in-kind