Darlene L. MANGRUM and Linda Pruitt, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Jerry GRIEPENTROG in his capacity as Director of the Nevada Department of Human Resources, Linda A. Ryan, in her capacity as Administrator of the Welfare Division, Nevada Department of Human Resources, Defendants,

v.

SECRETARY OF the U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, Otis Bowen, Secretary, Third–Party Defendants.

No. CV–R–86–212–ECR.

United States District Court, D. Nevada.

Oct. 20, 1988.

Armand Di Meo, Jr., Nancy E. Fong Wong, Washoe Legal Services, Reno, Nev., and Jon L. Sasser, Nevada Legal Services, Inc., Carson City, Nev., for plaintiffs.

Brian McKay, Atty. Gen. by Cynthia A. Pyzel, Deputy Atty. Gen., State of Nev., Nevada State Welfare Div., Reno, Nev., for defendants.

William A. Maddox, U.S. Atty. by David S. Moynihan, Asst. U.S. Atty., Las Vegas, Nev., and William A. Maddox, U.S. Atty. by Shirley Smith, Asst. U.S. Atty., Reno, Nev., for third-party defendants.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

### I. STATEMENT OF THE CASE

The issue before the Court is whether loans received from private, nongovern-

mental sources can be considered "income" for the purpose of calculating eligibility and benefits under Nevada's Aid to Dependent Children ("ADC")[1] program. Plaintiffs and defendants have filed cross motions for summary judgment and both parties agree that no material facts are in dispute.

This Court certified this case as a class action pursuant to Fed.R.Civ.P. 23(b)(2) & (3). Plaintiffs represent the class of all individuals in Nevada "who receive, have received, or will receive Aid to Dependent Children benefits and who, while receiving those benefits, or while their applications for benefits are pending, have received or will receive, nongovernmental loans, such that their benefits were or will be reduced or terminated, or that overpayment actions have been or will be threatened because of the receipt of nongovernmental loans." Minute Order of April 2, 1987. Plaintiffs and defendants reached a settlement regarding the treatment of class members who were affected by the policy in question prior to April 11, 1988. *See* Order of Partial Settlement entered June 20, 1988. Furthermore, a preliminary injunction in effect since June 16, 1987, has prohibited the defendants from treating nongovernmental loans as income pending the final disposition of this case. *See* Preliminary Injunction of June 16, 1987. Hence, the only issue before this Court is whether to permanently enjoin defendants from calculating nongovernmental loans as income for ADC purposes.

Linda Pruitt is a named plaintiff and a representative member of the class. On December 13, 1985, Pruitt applied for ADC assistance. While waiting for her application to be processed, Pruitt borrowed $175 from a friend to pay her January, 1986 rent and meet other current living expenses.

The processing period for an ADC application can often take 45 days or longer.[2] On February 6, 1986, the Nevada Welfare Division approved Pruitt's application and sent her benefit checks for the past months of December and January. The Division treated the funds that Pruitt had borrowed as "income" and reduced her January benefits by $175. After this reduction, Pruitt was unable to pay her monthly expenses for day care for her young son. She thereby was forced to remove her son from the day care program and discontinue her attendance at Clark County Community College.

Defendants in this case are the Director of the Nevada Department of Human Resources and the Administrator of the Welfare Division of the Nevada Department of Human Resources. Defendants admit that their policy is to consider nongovernmental loans as income in assessing eligibility and benefits under Nevada's ADC program. *Nevada Eligibility & Payments Manual* §§ 204.2(B)(10), 205.1(13). This policy began on October 17, 1983, after the federal Department of Health and Human Services (hereinafter "HHS") instructed the Nevada Welfare Division to conform its treatment of nongovernmental loans to federal policy.[3] Nevada's ADC program relies primarily on federal funding and risks the loss of that funding if its policies conflict with federal ADC regulations. *See Townsend v. Swank*, 404 U.S. 282, 285–86, 92 S.Ct. 502, 504–05, 30 L.Ed.2d 448 (1971); *McCoog ex rel. Ferguson v. Hegstrom*, 690 F.2d 1280, 1284 (9th Cir.1982); 42 U.S.C. § 601. Hence, defendants have served the Secretary of HHS (hereinafter, "the Secretary") with a third-party complaint pursuant to Fed.R.Civ.P. 14(a). Defendants argue that any adverse decision of this Court should also be binding on HHS so as not to

---

**1.** This program is a joint state-federal venture which the federal government usually refers to as Aid to Families with Dependent Children ("AFDC"). For the sake of convenience, however, this order shall adopt the ADC acronym used in Nevada when referring to this program.

**2.** The Nevada Welfare Division's Eligibility and Payments Manual provides that "Applicants must be determined eligible and mailed an ap-

proval notice or determined ineligible and mailed a denial notice within 45 days unless unusual circumstances exist." *Nevada Eligibility and Payments Manual* § 201.3(A).

**3.** Prior to this date, *Nevada Eligibility & Payments Manual* § 205.1(17) had expressly excluded private loans from being considered as income.

put the federal funding of Nevada's ADC program at risk.

HHS directed the Nevada Welfare Division to treat private loans as income on the basis of the Secretary's interpretation of 45 C.F.R. § 233.20(9)(3)(iv)(B). This regulation states that "in determining the availability of income and resources, the following will not be included ... loans and grants, such as scholarships, obtained and used under conditions that preclude their use for current living costs." The Secretary interpreted the negative pregnant implicit in this regulation to mean that loans which are available to meet current living expenses can be considered income.

This Court finds that the Secretary's interpretation of this regulation is logical since any other interpretation renders meaningless the "use for current living costs" language. The presence of this qualifying language strongly suggests that the regulation intended to treat loans that were available to meet current living expenses as income. All logical interpretations of federal regulations, however, are not necessarily valid. Since federal regulations are promulgated by agencies to implement Congressional statutes, these regulations must comply with the provisions and purpose of the underlying statute. *King v. Smith,* 392 U.S. 309, 333, 88 S.Ct. 2128, 2141, 20 L.Ed.2d 1118 (1968); *McCoog,* 690 F.2d at 1284. Hence, this Court must determine whether the treatment of nongovernmental loans as income is consistent with the ADC provisions of the Social Security Act, 42 U.S.C. § 602.

## II. ANALYSIS OF ADC STATUTE

### A. *Deference Due Secretary's Interpretation*

■ At the outset, this Court notes that the Secretary's interpretation of the ADC statute is entitled to deference. Social welfare legislation is quite complex and the Secretary's experience in this field often enables him to accurately perceive congressional intent. *Lukhard v. Reed,* 481 U.S. 368, 377, 107 S.Ct. 1807, 1814, 95 L.Ed.2d 328 (1987) (citing *Chemical Mfrs Ass'n v. Natural Resources Defense Council, Inc.,*

470 U.S. 116, 125, 105 S.Ct. 1102, 1107, 84 L.Ed.2d 90 (1985)); *Lukhard,* 107 S.Ct. at 1816 (Blackmun, J., concurring). Nevertheless, courts must ensure that agency regulations are not applied in a manner inconsistent with the statutes that they seek to implement. *United States v. Larionoff,* 431 U.S. 864, 873 & n. 12, 97 S.Ct. 2150, 2156 n. 12, 53 L.Ed.2d 48 (1977); *Vista Hill Found., Inc. v. Heckler,* 767 F.2d 556, 560 (9th Cir.1985). Courts must "hold unlawful and set aside agency action" that is "not in accordance with law" or "short of statutory right." *See* 5 U.S.C. § 706(2)(A) & (C).

### B. *Definition of Income under ADC Statute*

The text of the Social Security Act provides little insight as to what constitutes income for ADC purposes. The statute simply states that "the state agency—(A) shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children." 42 U.S.C. § 602(a)(7). The statute does not define "income" or "resources" and it does not define the difference between these two categories.

The Supreme Court, however, has derived some parameters for these terms. In *Lukhard v. Reed,* 481 U.S. 368, 107 S.Ct. 1807, 95 L.Ed.2d 328 (1987), the Court faced the issue of whether a personal injury award should be considered "income" or a "resource" in the computation of ADC eligibility and benefits. A four-justice plurality ruled that personal injury awards could be considered income. The plurality stated that many general and legal sources "commonly define 'income' to mean 'any money that comes in,' without regard to any related expenses incurred and without any requirement that the transactions producing the money result in a net gain." *Id.* 107 S.Ct. at 1812. The plurality reasoned, however, that such a broad definition of income was unnecessary to reach the conclusion that personal injury awards constituted income. It held that these awards constituted "a gain" and, therefore, fit the traditional definition of income:

[Personal injury awards] often are intended in significant part to compensate for the loss of gain, e.g., lost wages. Since the gain would have been income, surely at least that part of a personal injury award that replaces it must also be income.

*Id.* (citation and footnote omitted). The plurality further stated that all components of a personal injury award, including pain and suffering, could reasonably be considered an economic, if not personal, gain. *Id.* at 1815–16.

Justice Blackmun concurred in the result reached by the plurality. He expressed no opinion, however, on the definition of income for the ADC program. He based his concurrence solely on deference to the Secretary's interpretation of the ADC statute. *Id.* at 1816 (Blackmun, J., concurring).

Four justices vigorously dissented from the Court's holding. The dissent stated that the common meaning of income is "the gain derived from capital, from labor, or from both combined." *Id.* at 1818 (Powell, J., dissenting). The dissent reasoned that this definition must apply to the ADC statute because "[a] fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Id.* (quoting *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979)). In contrast to the plurality opinion though, the dissent maintained that most components of personal injury awards could not be considered a gain. While the dissent admitted that damages for lost wages should constitute income, it argued that damages for pain and suffering, loss of consortium, and the like, are compensatory in nature. It reasoned that such damages are intended to compensate for nonpecuniary losses and, therefore, should not be considered a net economic gain. *Id.* 107 S.Ct. at 1819.

Defendants in the instant case assert that the *Lukhard* plurality's definition of income necessarily includes nongovernmental loans. They argue that since such loans constitute "money that comes in," these loans should be considered income. While the loans at issue are indeed money that comes in, defendants' reliance on this broad definition is misplaced. Only four justices suggested that such a broad definition might apply to income for ADC purposes. More importantly, however, this suggested definition was mere dicta. The plurality opinion repeatedly stressed that personal injury awards could be treated as income because these awards provide a financial gain. *Lukhard*, 107 S.Ct. at 1812, 1815.

### C. Definition of Loans

█ In contrast to personal injury awards, nongovernmental loans do not provide a financial gain. The essential characteristic of a loan is that it must be repaid.[4] *United States v. Pomponio*, 563 F.2d 659, 662 (4th Cir.1977) ("the *sine qua non* of a bona fide non-reportable loan is the taxpayer's own intention to repay."), *cert. denied*, 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978); *Commissioner v. Makransky*, 321 F.2d 598, 600 (3d Cir.1963) ("one essential without which a transaction cannot be recognized as a loan.... [is] the intention that the money advanced be repaid."). This duty to repay distinguishes loans from wages, personal injury awards, gifts, child support payments and all other forms of income. Since the borrower must repay the loan in its entirety (and possibly with interest), the loan principal is not a financial gain.

The duty to repay loans precludes defendants from treating nongovernmental loans as income for the purpose of determining ADC eligibility and benefits. The ADC statute prohibits states from "overvaluing assets in a manner that attributes non-existent resources to recipients." *Heckler v. Turner*, 470 U.S. 184, 200, 105 S.Ct. 1138, 1147, 84 L.Ed.2d 138 (1985); *see also Schrader v. Idaho Dep't of Health*

---

4. Defendants have not suggested that the loans at issue are sham transactions where the borrower has no duty to repay. The Court is confident that the Nevada Welfare Division has the administrative ability to distinguish bona fide loans from gifts and other sources of unencumbered support.

*and Welfare,* 768 F.2d 1107, 1112 (1985) ("administrators may not value an item at its full fair market value if the item is encumbered."). For example, in *National Welfare Rights Org. v. Mathews,* 533 F.2d 637 (D.C.Cir.1976), the District of Columbia Circuit Court of Appeals held invalid a federal regulation that evaluated ADC eligibility on the basis of the "gross market value including encumbrances" of an applicant's real and personal property. *Id.* at 639. The court ruled that the ADC statute required state programs to value an applicant's resources in accordance with fiscal reality. The actual value of an item, whether it be a financial instrument or personal property, is its fair market value less its encumbrances; that is its "equity" value. As the D.C. Circuit noted:

> To assume that furniture worth $200 on which a family still owes $180 can be miraculously converted into $200 defies the laws of economics and punishes welfare recipients.... AFDC prohibits ... the presumption that encumbered property has a value to the [welfare] recipient of its total fair market value.

*Id.* at 648; *see also Green v. Barnes,* 485 F.2d 242, 244 (10th Cir.1973) (striking down a state welfare regulation that valued an ADC applicant's house without considering any outstanding mortgages and encumbrances on that house).

The principles articulated in these precedents are equally applicable to the case at bar. Since nongovernmental loans must be repaid, they are totally encumbered. These loans have no equity value. Treating these loans as income is economically indefensible, as illustrated by the plight of representative plaintiff Linda Pruitt. Pruitt borrowed $175 from a friend to meet her current living expense while she waited for the Nevada Welfare Division to process her ADC application. After approving her application, the Nevada Welfare Division reduced her benefits by the full amount of her $175 loan. In addition to this reduction in benefits, Ms. Pruitt must also repay the $175 to her friend. Hence, treating loans as income has the perverse effect of costing the borrower twice the amount of the loan. The ADC recipient must both repay every dollar borrowed and have her benefits reduced by every dollar borrowed.[5]

### D. *Judicial Precedent and Legislative History*

Defendants attempt to support their proposition that loans can be considered income under the ADC statute by citing *Richman v. Juras,* 393 F.Supp. 349 (D.Or. 1975) and its progeny. In *Richman,* a three-judge district court upheld a state welfare regulation that treated excess educational loans as income. The court ruled that where federal educational grants and loans covered all of an ADC recipients educational expenses, state educational loans received by that individual could be considered income. *Id.* at 351.

Defendants' reliance on this case is inapposite for several reasons. Unlike the case at bar, plaintiffs in *Richman* did not challenge the state regulation as being inconsistent with the ADC statute's definition of income. The *Richman* plaintiffs challenged only the Oregon Welfare Division's interpretation of the regulation and the constitutionality of the regulation, both of which the court correctly upheld. In addition, the loans at issue in *Richman* were state educational loans which usually can be repaid over several years. In contract, the private, nongovernmental loans at issue in this case usually must be repaid in the immediate future. Furthermore, the *Richman* court appears to have relied on an unduly expansive reading of legislative history. The *Richman* court interpreted the 1972 House Report on amendments to the ADC statute as excluding from income "only *scholarship and loan* funds actually used to pay tuition and [educational] fees."

---

**5.** In addition to violating the ADC statute, this double-payment result violates 45 C.F.R. § 233.20(a)(3)(ii)(E). This regulation provides that "in determining need and the amount of assistance payment ... (E) Income and resources will be reasonably evaluated. Resources will be evaluated according to their equity value." Just as it is unreasonable to evaluate resources without regard to their encumbrances, it is unreasonable to treat completely encumbering loans as an increase in income.

*Id.* at 351 (emphasis added). Hence, the court concluded that loans not used for educational expenses could be considered income. The actual House Report, however, excluded from income any *"grant, scholarship, or fellowship* received for use in paying the costs of tuition and fees at any educational institution." *H.Rep.* No. 231, 92nd Cong., 2d Sess., *reprinted in 1972 U.S.Code Cong. & Admin.News* 4989, 5164, 5321 (emphasis added). The *Richman* court was unwarranted in interpreting the language of the House Report to extend to loans as well as scholarships. Loans are significantly different from "grants, scholarships, and fellowships" because unlike these types of financial aid, loans must be repaid.

Indeed, the scant available legislative history indicates that Congress never intended loans to be treated as income under the ADC statute. The 1972 House Report on the ADC statute includes a discussion of what constitutes income. According to this report, income consists of both earned and unearned income. Earned income is wages, self-employment income, and other benefits and proceeds derived from employment. *Id.* at 5161. The report defines unearned income as "annuities, prizes and awards, proceeds of life insurance not needed for last illness and burial (with a maximum of $1,500), gifts, support, inheri-

tances, grants, dividends, interest payments, as well as benefits from all other public and private pension, disability, or unemployment programs." *Id.* at 5162. Congress' extensive definition of income does not include loans. This omission certainly suggests that Congress did not consider loans to be income for ADC purposes.[6]

Defendants argue, however, that more recent legislative history dictates the opposite conclusion. They argue that the 1981 Omnibus Budget Reconciliation Act (OBRA) authorizes the treatment of loans as income. Defendants point specifically to the "lump-sum rule," 42 U.S.C. § 602(a)(17), which provides that nonrecurring income received by ADC recipients, such as lottery winnings or worker compensation awards, must be budgeted over several months. *See* 45 C.F.R. 233.-20(a)(3)(ii)(F). Prior to the enactment of this provision, ADC recipients could regain ADC eligibility by spending their "lump-sum" income as quickly as possible. Defendants argue that failure to treat loans as income will frustrate the purpose of the lump-sum rule. They maintain that ADC recipients will be encouraged to spend their borrowed money as quickly as possible in order to regain their ADC eligibility.

---

**6.** While the House Report's definition of income was not necessarily exhaustive, the omission of loans from this definition is significant. Loans generally are not considered to be income because they must be repaid. *See Lukhard,* 107 S.Ct. at 1811–12 ("income" usually involves a financial gain); *Pomponio,* 563 F.2d at 662–63 (loan not treated as income for tax purposes where borrower intends to repay). Since loans generally are not defined as income, Congress would have explicitly included loans in its extensive list of unearned income had it intended to change this traditional understanding. *See Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."); *Williams v. Wohlgemuth,* 540 F.2d 163, 169 n. 30 (3d Cir.1976) ("Guidance [in interpreting the ADC statute] is given by the maxim 'inclusio unius est exclusio alterius,' [expressing one thing excludes that which is not expressed] which informs a court to exclude from operation those items not included in a list of ele-

ments that are given effect expressly by the statutory language.")

The Court feels that the 1972 House Report on the ADC statute is more indicative of Congressional intent than a comparison of the ADC statute to other federal legislation. The fact that loans are not considered income under the Internal Revenue Code or the Supplemental Security Income (SSI) program is not particularly relevant to the issue at bar. The purposes of the ADC program are sufficiently dissimilar from the purposes of these other programs to make any comparison meaningless. Moreover, such a comparison is not fruitful. Since Congress excluded loans from income in those other programs, did it intend to do the same under ADC? Or, since Congress expressly excluded loans from being considered income under these other programs, did Congress not intend to exclude loans from income under ADC? Both interpretations are equally plausible and equally unpersuasive. *Cf. Lukhard,* 107 S.Ct. at 1812–13; *Lukhard,* 107 S.Ct. at 1818–19 (Powell, J. dissenting).

Defendants' analysis, however, is significantly flawed in two respects. First of all, legislative history shows that the 1981 OBRA amendments were not intended to affect in any way the ADC statute's definition of income. The amendments simply required different treatment of those lump sums already considered to be income. *See Watkins v. Blinzinger,* 789 F.2d 474, 480 (7th Cir.1986) ("The inescapable fact is that Congress wanted to compel recipients of AFDC to budget lump-sum receipts of '*in-come' but did not consider what 'income' might be.*") (emphasis added). Secondly, excluding loans from income will not encourage ADC borrowers to spend their loan proceeds as quickly as possible. The Nevada Welfare Division will presumably consider private loans to be "resources" under 42 U.S.C. § 602(a)(7) and resources must "be evaluated according to their equity value." *National Welfare Rights Org.,* 533 F.2d at 647–48; 45 C.F.R. 233.20(a)(3)(ii)(E). Since loans have no equity value, they should have no impact on an ADC recipient's eligibility or benefits. Consequently, ADC recipients who borrow money shall have no incentive to spend their loan proceeds either quickly or slowly.

In conclusion, therefore, this Court finds that the Nevada Welfare Division's policy of treating private, nongovernmental loans as income violates 42 U.S.C. § 602(a)(7).[7] Loans, since they must be repaid, are conceptually distinct from income. In both common and legal usage, the definition of income does not encompass loans. This Court finds no indication that Congress intended to depart from the commonly accepted definitions of income and loans in the ADC statute. Indeed, treating loans as income for ADC purposes creates an injustice in that it effectively forces ADC recipients who borrow money to repay twice the value of their loans. This Court finds it implausible to infer that Congress implicitly intended such an unconscionable result.

### III. THIRD–PARTY COMPLAINT

Defendants have moved this Court to apply its decision in this matter to the third-party defendant, the Secretary of the United States Department of Health and Human Services. Defendants have presented strong evidence that their policy of treating loans as income under the ADC program was mandated by the Secretary. Although defendants served their motion for summary judgment on the Secretary, the Secretary has not yet responded. This Court is loath to enter judgment by default on an issue of this magnitude and, therefore, shall give the Secretary a final chance to oppose defendants' motion.

### IV. JUDGMENT AND ORDER

IT IS, THEREFORE, HEREBY ORDERED that plaintiff's Motion for Summary Judgment (docket # 34) is GRANTED. Accordingly, this Court shall issue a permanent injunction pursuant to this Order.

IT IS FURTHER ORDERED that defendants' Motion for Summary Judgment (docket # 83) is DENIED insofar as it seeks judgment against the Plaintiff Class.

IT IS FURTHER ORDERED that the Third–Party Defendant shall have fifteen (15) days from the date of this order to file an opposition to defendants' Motion for Summary Judgment (docket # 83). If the Secretary files such an opposition, defendants shall have ten (10) days from its filing to reply.

### PERMANENT INJUNCTION

This Court has granted the motion of the Plaintiff Class for summary judgment. Accordingly, IT IS HEREBY ORDERED THAT:

1. The Nevada Welfare Division's policy of treating private, nongovernmental loans as income in determining eligibility and benefits under Nevada's Aid to Dependent Children ("ADC") program, as set forth in *Nevada Eligibility & Payments Manual,* §§ 204.2(B)(10), 205.1(13), is hereby declared to violate 42 U.S.C. § 602(a)(7), and

---

**7.** In light of this disposition, the Court does not reach the merits of plaintiffs' collateral estoppel argument.

thereby violate the Supremacy Clause of the United States Constitution.

2. Defendants, together with all their successors in interest, agents, employees, and all persons acting in concert with them, are permanently enjoined from considering private, nongovernmental loans as income for the purpose of calculating ADC eligibility, benefits, or grant amounts. To the extent that *Nevada Eligibility & Payments Manual* §§ 204.2(B)(10), 205.1(13) mandate the treatment of private, nongovernmental loans as income, defendants, together with all their successors in interest, agents, employees, and all persons acting in concert with them, are permanently enjoined from applying or enforcing these provisions.

3. Defendants, together with all their successors in interest, agents, employees, and all persons acting in concert with them shall continue to comply with all the provisions of the Order for Partial Settlement entered by this Court on June 20, 1988.

4. Defendants are hereby ordered to submit to this Court a list of those persons affected by their treatment of nongovernmental loans as income in violation of the Preliminary Injunction entered by this Court on June 16, 1987. This list is ordered pursuant to Section I(5) of the Order for Partial Settlement entered by this Court on June 20, 1988.